No. 25-3036

---

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

DAVID A. McCOY, II,
*PLAINTIFF*,

JEFFREY M. JOHNSON, SR.
*PLAINTIFF - APPELLANT*

v.

BOB JACOBSON,
IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE
MINNESOTA DEPARTMENT OF PUBLIC SAFETY,
*DEFENDANT – APPELLEE*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
No. 25-CV-054

---

BRIEF FOR APPELLANT

---

Ryan Morrison
Timothy Kilcullen
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
rmorrison@ljc.org
tkilcullen@ljc.org
*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

SUMMARY OF THE CASE ................................................................ 1

JURISDICTIONAL STATEMENT ........................................................ 2

STATEMENT OF ISSUES ................................................................. 2

STATEMENT OF THE CASE ............................................................. 4

SUMMARY OF ARGUMENT ............................................................. 6

STANDARD OF REVIEW ................................................................. 8

ARGUMENT ................................................................................... 8

I.    Minnesota Failed to Meet Its Second Amendment Burden ........... 8

II.   Minnesota Must Show Someone is Dangerous Before Disarming
      Him ........................................................................................ 13

      A.  Minnesota's Firearm Reciprocity Statute Violates *Worth* by
          Categorically Deeming Unrecognized License Holders Too
          Dangerous to Bear Arms in Public for Self-Defense .............. 13

      B.  Minnesota's Reciprocity Statute is Not the Equivalent of
          Historic Surety Laws ............................................................ 23

III.  Minnesota's Firearm License Reciprocity Statute is
      Unconstitutionally Vage, Overbroad, and Unreasonable ............. 29

CONCLUSION ................................................................................ 36

CERTIFICATE OF COMPLIANCE ..................................................... 38

CERTIFICATE OF SERVICE ............................................................. 39

ADDENDUM ......................................................................... 40

JOINT APPENDIX

# TABLE OF AUTHORITIES

CASES

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ................................................................ 14, 35

*Duhe v. City of Little Rock,*
    902 F.3d 858 (8th Cir. 2018) ............................................. 4, 30, 33

*F.C.C. v. Fox Television Stations, Inc.,*
    567 U.S. 239 (2012) ................................................................. 4, 30

*Jacobson Warehouse Co. v. Schnuck Mkts., Inc.,*
    13 F.4th 659 (8th Cir. 2021) .............................................................. 8

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ........................................................................... 8

*Minnesota Voters All. v. Mansky,*
    585 U.S. 1 (2018) ..................................................... 4, 30, 31, 36

*New York State Rifle & Pistol Ass'n v. Bruen,*
    597 U.S. 1 (2022) ............................................................... *passim*

*United States v. Cooper,*
    127 F.4th 1092 (8th Cir. 2025) ........................................ 3, 10, 22

*United States v. Jackson,*
    110 F.4th 1120 (8th Cir. 2024) ...................................................... 22

*United States v. Perez,*
    145 F.4th 800 (8th Cir. 2025) .................................................. 18, 19

*United States v. Rahimi,*
    602 U.S. 680 (2024) ........................................................... *passim*

*United States v. Veasley,*
98 F.4th 906 (8th Cir. 2024) ........................................................ 22

*Worth v. Jacobson,*
108 F.4th 677 (8th Cir. 2024) ................................................ *passim*

CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I ............................................................ 3, 14, 30

U.S. CONST. amend. II ............................................................. *passim*

U.S. CONST. amend. XIV ............................................................ 3, 30

FEDERAL STATUTES

28 U.S.C. § 1291 ......................................................................... 2

28 U.S.C. § 1331 ......................................................................... 2

28 U.S.C. § 1343(a) ..................................................................... 2

42 U.S.C. § 1983 ......................................................................... 2

FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(6) ............................................................... 5

MINNESOTA STATUTES

Minn. Stat. § 299C.091 ........................................................... 35, 36

Minn. Stat. § 624.714, Subd. 1a .................................................. 5

Minn. Stat. § 624.714, Subd. 2 .......................................... 11, 15, 16

Minn. Stat. § 624.714, Subd. 6(a)(3) ........................................ 16

Minn. Stat. § 624.714, Subd. 9(5)................................................................5

Minn. Stat. § 624.714, Subd. 16(a)................................................... *passim*

OTHER STATE STATUTES

Ala. Code § 13A-11-75 .................................................... 20, 34, 35

Ariz. Rev. Stat. Ann. § 13-3112.................................... 20, 34, 35

Fla. Stat. § 790.06 ........................................................ 20, 34, 35

Ga. Code Ann. § 16-11-129.......................................... 20, 34, 35

Ind. Code § 35-47-2-3.................................................. 20, 34, 35

Iowa Code § 724........................................................... 20, 34, 35

Ky. Rev. Stat. § 237.109 ......................................................... 33

Me. Rev. Stat. Ann., Tit. 25, § 2003 ........................... 20, 34, 35

N. H. Rev. Stat. Ann. § 159.......................................... 20, 34, 35

Ore. Rev. Stat. §166.291............................................... 20, 34, 35

18 Pa. Cons. Stat. §6109.............................................. 20, 34, 35

Texas Tex. Gov't Code § 411.172................................. 20, 32, 35

Utah Code § 53-5a-303................................................. 20, 34, 35

Va. Code Ann. § 18.2-308 ............................................ 20, 34, 35

Wash. Rev. Code §9.41.070 .......................................... 20, 34, 35

Wis. Stat. §175.60........................................................ 20, 34, 35

Wyo. Stat. Ann. §6-8-104.............................................................. 20, 34, 35

OTHER AUTHORITIES

*CCDW Reciprocity*, KENTUCKY STATE POLICE,
https://wp.kentuckystatepolice.ky.gov/ccdw/ccdw-home/ccdw-reciprocity
(last visited Dec. 3, 2025) [https://tinyurl.com/yrex7nyv] ...................... 33

*State Reciprocity Information*, TEXAS DEPT. OF PUBLIC SAFETY,
https://www.dps.texas.gov/section/handgun-licensing/state-reciprocity-
information (last visited Dec. 3, 2025) [https://tinyurl.com/mr98bd38] 34

## SUMMARY OF THE CASE

Plaintiff-Appellant Jeffrey M. Johnson, Sr., brought this facial challenge against Minnesota's firearm license reciprocity statute, Minn. Stat. § 624.714, Subd. 16(a), because it violates the Second Amendment.

Johnson is a long-haul truck driver that travels across the United States and makes regular, annual trips to or through Minnesota. He has licenses to carry firearms from the states of Florida and Georgia. Because of the dangers posed to long-haul truck drivers, Johnson always carries a handgun with him for self-defense. But when he travels to Minnesota, state law requires him to unload his weapon and secure it in a container because Minnesota does not grant firearm license reciprocity to fifteen states, including Florida and Georgia. Minnesota only grants reciprocity to states that have firearm license laws "similar" to its laws. Thus, Johnson brought this Second Amendment lawsuit to challenge the reciprocity law.

Minnesota moved to dismiss the case, arguing that its reciprocity law is constitutional, and the district court agreed.

Oral argument would be beneficial to the court. Each side should have 15 minutes to present their arguments.

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over this Second Amendment challenge to Minnesota's laws under 28 U.SC. §§ 1331, 1343(a) and 42 U.S.C. § 1983. J. App. 3; R. Doc. 1, at 3. The district court entered its final order on September 11, 2025, dismissing all of Plaintiffs' claims. J. App. 84; R. Doc. 39, at 1. Judgment was entered on September 12, 2025. J. App. 102; R. Doc. 40, at 1. Plaintiffs timely filed their notice of appeal on October 10, 2025. J. App. 103; R. Doc. 41, at 1.

This Court has jurisdiction over this appeal per 28 U.S.C. § 1291.

# STATEMENT OF ISSUES

I. Whether Minnesota must demonstrate that its state firearm license reciprocity statute, Minn. Stat. § 624.714, Subd. 16(a), is consistent with the United States' historical tradition of firearm regulation before revoking the Second Amendment rights of law-abiding citizens that possesses another state's firearm license.

Constitutional and statutory provisions:

U.S. CONST. amend. II

Minn. Stat. § 624.714, Subd. 16(a)

Cases:

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022)

*United States v. Rahimi*, 602 U.S. 680 (2024)

*Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024)

*United States v. Cooper*, 127 F.4th 1092 (8th Cir. 2025)

II.   Whether Minnesota may revoke the Second Amendment rights of a law-abiding citizen that possesses another state's firearm license without first proving he is a danger to public safety.

Constitutional provision:

U.S. CONST. amend. II

Cases:

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022)

*United States v. Rahimi*, 602 U.S. 680 (2024)

*Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024)

III.   Whether Minn. Stat. § 624.714, Subd. 16(a)'s "similar" standard for allowing state firearm license reciprocity is constitutional.

Constitutional and statutory provisions:

U.S. CONST. amend. I

U.S. Const. amend. XIV

Minn. Stat. § 624.714, Subd. 16(a)

Cases:

*F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012)

*Minn. Voters All. v. Mansky*, 585 U.S. 1 (2018)

*Duhe v. City of Little Rock*, 902 F.3d 858 (8th Cir. 2018)

## STATEMENT OF THE CASE

Jeffrey Johnson is an undisputed "law-abiding citizen with no history of violent behavior and is not otherwise disqualified from obtaining a Minnesota" firearm license. J. App. 87; R. Doc. 39, at 4. He works as a long-haul truck driver, which causes him to travel across the United States including several trips to Minnesota each year. J. App. 87-88; R. Doc. 39, at 4-5. He owns firearms and possesses valid firearm licenses from Florida and Georgia. J. App. 87; R. Doc. 39, at 4. And because of "the prevalence of violent crimes" against truck drivers, Johnson carries a handgun with him in the cab of his truck for self-defense, defense of others, defense of his vehicle, and defense of his cargo. *Id.*

However, when Johnson travels to Minnesota state law forces him, under threat of criminal penalties, to disarm, unload his firearm, and

secure it in a container because he does not possess a Minnesota firearm license. *See* Minn. Stat. §§ 624.714, subds. 1a, 9(5).

Minnesota grants firearm license reciprocity to states with "similar" firearm license regulations. *Id*. at subd. 16(a). But fifteen states, including Florida and Georgia, are not on the reciprocity list. *See* J. App. 86; R. Doc. 39, at 3.[1]

Johnson brought this suit to maintain his constitutional rights when his job takes him to Minnesota.[2] Specifically, Johnson claims Minnesota's firearm reciprocity law, Minn. Stat. § 624.714, subd. 16(a), violates the Second Amendment. J. App. 88; R. Doc. 39, at 5.

Minnesota moved to dismiss under Fed. R. Civ. P 12(b)(6), claiming that Johnson lacked standing and that the law was otherwise constitutional. J. App. 88, 91, 93; R. Doc. 39, at 5, 8, 10.

---

[1] The unrecognized states are: Alabama, Arizona, Florida, Georgia, Indiana, Iowa, Maine, New Hampshire, Oregon, Pennsylvania, Utah, Virginia, Washington, Wisconsin, and Wyoming.

[2] David A. McCoy, II, a long-haul truck driver with a Texas firearm license, was also a plaintiff when the complaint was filed. J. App. 9-10; R. Doc. 1, at ¶¶ 25-33. Minnesota did not grant reciprocity to Texas when this lawsuit initiated. *Id*. It does now. J. App. 88; R. Doc. 39, at 5 n.3. And McCoy voluntarily dismissed his claim. J. App. 88; R. Doc. 39, at 5.

The district court granted Minnesota's motion, ruling that while Johnson did have standing to challenge the reciprocity statute, it was otherwise constitutional. J. App. 93, 100-01; R. Doc. 39, at 10, 17-18.

Purportedly applying the test set forth in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022), the district court held that Minn. Stat. § 624.714, subd. 16(a) was constitutional. J. App. 93, 100; R. Doc. 39, at 10, 17. The district court agreed with Johnson that the plain text of the Second Amendment covered his conduct. J. App. 94-97; R. Doc. 39, at 11-14. But the district court held that Minnesota's reciprocity statute was consistent with America's historical tradition of firearm regulation and, consequently, was constitutional. J. App. 97-100; R. Doc. 39, at 14-17.

This appeal followed. J. App. 103; R. Doc. 41, at 1.

## SUMMARY OF THE ARGUMENT

Johnson and everyone that holds a firearm license issued by a state that is not on Minnesota's reciprocity list has a Second Amendment right to carry a handgun for self-defense in public. When Minnesota regulates this right, courts must determine whether the Second Amendment's plain language covers the regulated conduct. If so, then

the government must prove its law is consistent with America's historical firearm regulations.

That process did not happen in this case.

Although the district court correctly determined that the Second Amendment covered Johnson's conduct, Minnesota never attempted to, and the district court did not require it to prove its firearm reciprocity statute was consistent with the Nation's historical firearm laws. By itself, this is reversible error.

The district court compounded its error by ruling—again without any historical analysis—that Minnesota's firearm licensure law and its accompanying reciprocity provision were constitutional because they are part of a "shall issue" licensing systems and the equivalent of historic surety laws (laws that required someone with a firearm to post a bond after a judicial finding that they are a danger to the public). But every state that Minnesota refuses to recognize is a "shall issue" state too, and historic surety laws presume someone has the right to carry a firearm until proven otherwise. Accordingly, the district court erroneously held that the state could disarm Johnson, and similarly situated individuals, without proving that they are a danger to the

public—even though these citizens possess firearm licenses from states that, like Minnesota, require license holders to demonstrate that they are law-abiding citizens.

The sole reason that Johnson cannot carry a firearm in Minnesota is because the firearm license laws in the states that issued his licenses are not "similar" to Minnesota's license laws. *See* Minn. Stat. § 624.714, subd. 16(a). What makes a state's firearm license scheme "similar" to Minnesota's regime? No one knows. Minnesota does not have or offer any workable or objective standards. Accordingly, Minnesota's reciprocity statute is also unconstitutionally vague, overbroad, and unreasonable.

## STANDARD OF REVIEW

A district court's decision on motion to dismiss is reviewed "de novo." *Jacobson Warehouse Co. v. Schnuck Mkts., Inc.*, 13 F.4th 659, 668 (8th Cir. 2021). All the facts alleged in the complaint are deemed to be "true" and "all reasonable inferences" are made in the nonmovant's favor. *Id.* (internal quotation marks omitted).

# ARGUMENT

## I. Minnesota failed to meet its Second Amendment burden.

"'[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.'" *Worth v. Jacobson*, 108 F.4th 677, 685 (8th Cir. 2024) (quoting *Bruen*, 597 U.S. at 10). And when the government regulates this right, courts must determine whether the Second Amendment's plain and ordinary language covers the regulated conduct. *Id.* at 687-88. If so, then the government has the burden to "demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 688. This process is not optional.

Indeed, the *Bruen* Court "reiterate[d]" that there are no shortcuts in this process. 597 U.S. at 24. "[T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* "*Only*" after this process "may a court

conclude that the individual's conduct" is not protected by the Second Amendment. *Id*. (emphasis added).

Therefore, "[i]n *every* Second Amendment case, the overarching question is whether a limitation on the right to keep and bear arms is 'consistent with this Nation's historical tradition of firearm regulation.'" *United States v. Cooper*, 127 F.4th 1092, 1094-95 (8th Cir. 2025) (quoting *Bruen*, 597 U.S. at 17) (emphasis added). And "[i]f no comparable analogues exist because disarmament is a purely modern solution to a centuries-old problem, or strays too far from the how and why of historical regulations, then the Second Amendment kicks in." *Id*. at 1095 (cleaned up).

However, Minnesota never demonstrated that its reciprocity law is consistent with America's historical tradition of firearm regulation. Its reciprocity law clearly "regulates arms-bearing conduct." *United States v. Rahimi*, 602 U.S. 680, 691 (2024). The statute allows recognized firearm licenses holders to exercise their Second Amendment rights in Minnesota. But it forces firearm license holders from unrecognized states to disarm at the state line. Therefore, Minnesota "bears the

burden to 'justify its regulation.'" *Id*. (quoting *Bruen*, 597 U.S. at 24); *see also Worth*, 108 F.4th at 688.

But instead of meeting its burden, the district court allowed Minnesota to take a shortcut at the pleading stage of the litigation and bootstrap its discretionary reciprocity law, Minn. Stat. § 624.714, subd. 16(a) (recognizing states with "similar" license laws), to its nondiscretionary "shall issue" firearm license statute, Minn. Stat. § 624.714, subd. 2, and argue that the laws were purportedly the equivalent of historic surety laws, which allowed judges to require individuals to post bond if there was a finding that they were a danger to the public. J. App. 38-42; R. Doc. 15, at 13-17; J. App. 96-100; R. Doc. 39, at 13-17. The district court agreed with the government and held that the "shall issue" license statute and the discretionary reciprocity law were essentially that same thing, the laws were the equivalent of historic surety regulations, and that the reciprocity statute was constitutional. J. App. 97-100; R. Doc. 39, at 14-17.

"[A] challenged regulation" is "lawful under the Second Amendment" only if it "fits within" America's "historic tradition of firearm regulation." *Rahimi*, 602 U.S. at 691 (internal quotation marks

omitted). Here, the record is devoid of "historical evidence." *Bruen*, 597 U.S. at 38. Because the district court dismissed this case at the pleading stage, there is no "historical record compiled by" Minnesota to "demonstrate" that there is a historic tradition of states "broadly prohibiting the public carry of commonly used firearms for self-defense" by individuals from other states or that surety laws could proactively disarm individuals traveling to a state without a judicial finding. *Id.*; *Rahimi*, 602 U.S. at 702 ("An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment."); *Worth*, 108 F.4th at 694 (a court must find an otherwise law-abiding citizen is a credible threat before disarming them).

"Because the plain text of the Second Amendment covers [Johnson's] conduct, it is presumptively constitutionally protected and requires Minnesota to proffer an adequate historical analogue consistent with the Nation's historical tradition of firearm regulation." *Worth*, 108 F.4th at 692. And because there is no evidence in the record that reciprocity statutes are "consistent with the Nation's historic tradition of firearm regulation," *id.*, it is impossible for Minnesota to meet its burden.

Therefore, at a minimum, the district court should be reversed and case remanded so that the record may develop to determine whether the government can meet its burden. The district court should "decide [the] case based on the historical record compiled by the parties." *Bruen*, 597 U.S. at 25 n.6.

## II. Minnesota must show someone is dangerous before disarming him.

"Because the plain text of the Second Amendment covers [Johnson's] conduct," his desire to carry a handgun in public for self-defense with his unrecognized firearm license is "presumptively constitutionally protected." *Worth*, 108 F.4th at 692. "Minnesota must prove that it 'is consistent with this Nation's historical tradition of firearm regulation' for the state to ban, on account of their [unrecognized firearm license], the public carrying of handguns by ordinary, law-abiding, adult citizens." *Id.* at 693 (quoting *Bruen*, 597 U.S. at 34).

### A. Minnesota's firearm reciprocity statute violates *Worth* by categorically deeming unrecognized license holders too dangerous to bear arms in public for self-defense.

"'[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right,' 'the natural right' to 'resistance,' 'self-preservation and

defense,' not merely a common law right." *Worth*, 108 F.4th at 687

(quoting *District of Columbia v. Heller*, 554 U.S. 570, 593-94 (2008)).

The Second Amendment protects this fundamental right for all

"ordinary, law-abiding citizens" to "possess a handgun" and "carry [it]

publicly for their self-defense." *Bruen*, 597 U.S. at 8-10. This right

belongs "to 'all Americans.'" *Worth*, 108 F.4th at 689 (quoting *Heller*,

554 U.S. at 581). "Minnesota must overcome the 'strong presumption'

that [this] right applies to" unrecognized firearm license holders. *Id*.

(quoting *Heller*, 554 U.S. at 580).

"[T]he inherent right of self-defense [is] central to the Second

Amendment right." *Heller*, 554 U.S. at 628. This "constitutional right to

bear arms in public for self-defense is not a second-class right, subject to

an entirely different body of rules than the other Bill of Rights

guarantees." *Bruen*, 597 U.S. at 70 (internal quotation marks omitted).

Just like the First Amendment protections for free speech, free exercise,

freedom of assembly, and petition, the Fourth Amendment's protection

from unreasonable searches and seizures, the Fifth Amendment right to

remain silent, the Sixth Amendment right to counsel and public trial, or

the Eighth Amendment's protection from cruel and unusual

punishment, an ordinary, law-abiding citizen's right to possess a firearm in public for self-defense is guaranteed by the Second Amendment. *Id.* at 70-71.

Minnesota's firearm license statute (Minn. Stat. § 624.714, subd. 2) is consistent with the Second Amendment's "unqualified command." *Id.* at 24 (internal quotation marks omitted). Its firearm reciprocity statute (Minn. Stat. § 624.714, subd. 16(a)) is not.

However, the district court erroneously ruled that Minnesota's license statute and its reciprocity statute were constitutionally simpatico. J. App. 98-99; R. Doc. 39, at 15-16. Indeed, the district court viewed the "reciprocity provision [as] an extension of" the license law and held that "the permitting regime and reciprocity provision" satisfy *Bruen*'s historical analysis. J. App. 98; R. Doc. 39, at 15. The district court held the "shall issue" nature of the license statute made it constitutional and that the reciprocity statute did "not independently burden Second Amendment rights"—"not add[ing] additional restrictions regarding who can or cannot carry firearms in Minnesota." J. App. 98-100; R. Doc. 39, at 15-17. Not so.

The reciprocity statue does independently burden Second Amendment rights by adding additional restrictions on the right to carry firearms. Ordinary, law-abiding citizens with unrecognized firearm licenses must overcome an additional regulatory hurdle for their Second Amendment rights in Minnesota. The reciprocity statute does not have a "shall issue" nature with objective standards like its license counterpart. Instead, it only allows licenses from states with "similar" laws, Minn. Stat. § 624.714, subd. 16(a), which is a much more subjective standard, like in the "special need" standard the *Bruen* Court struck down. *See* 597 U.S. at 12-13. Accordingly, the reciprocity statute independently burdens Second Amendment rights.

Specifically, after this Court's decision in *Worth*, 108 F.4th at 698, Minnesota's license law requires the government to issue a firearm license to anyone that (1) had pistol safety training; (2) is an adult; (3) completes an application; (4) is not prohibited from possessing a firearm under state or federal law; (5) is not listed in Minnesota's criminal gang database; and (6) is not likely to pose a danger to themselves or the public. *See* Minn. Stat. §§ 624.714, subd. 2, subd. 6(a)(3); J. App. 85-86; R. Doc. 39, at 2-3. "Applications for permits to carry must be granted or

denied within 30 days, or else they will automatically be issues." J. App. 86; R. Doc. 39, at 3.

On the other hand, Minnesota's reciprocity statute is more restrictive on the right to bear arms for self-defense than the Minnesota license statute or the Second Amendment. "[H]istory reveals a consensus that States [can]not ban public carry altogether," and that "concealed-carry prohibitions [are] constitutional only if they did not similarly prohibit open carry." *Bruen*, 597 U.S. at 53; *see also id.* at 67 (there is "overwhelming evidence of an otherwise enduring American tradition permitting public carry"). But Minnesota's reciprocity statute prohibits both. Minnesota allows ordinary, law-abiding citizens with a firearm license from another state to carry a firearm in public for self-defense *only if* the issuing state's laws are "similar" to Minnesota's firearm license laws. Minn. Stat. § 624.714, subd. 16(a). Otherwise, the unrecognized license holder's Second Amendment rights are revoked in Minnesota for an indefinite period.

What does it mean for a state to have "similar" laws to Minnesota license laws? Minnesota has not told anyone. When the district court asked the government that question at the motion to dismiss hearing, it

responded by just reading the statute without explanation. J. App. 131-32; R. Doc. 45, at 28:19—29:14.

Like it did in *Worth*, Minnesota is "deem[ing] a group of people," i.e., unrecognized firearm license holders, "to pose a risk of danger, [so that] it may ban the group's" Second Amendment rights. 108 F.4th at 693. And Minnesota is demanding more than the Second Amendment requires for an out-of-state firearm license to be valid.

"[L]egislatures traditionally possess[] discretion to disqualify categories of people from possessing firearms to address a danger of misuse by those who deviated from legal norms, or presented an unacceptable risk of danger if armed." *United States v. Perez*, 145 F.4th 800, 806 (8th Cir. 2025) (internal quotation marks omitted). Even so, "[a]ssuming that historical regulation of firearm possession can be viewed as an effort to address a risk of dangerousness, this risk does not justify" the reciprocity statute. *Worth*, 108 F.4th at 694.

"Minnesota claims that [unrecognized firearm license holders] present a danger to the public, but it has failed to support its claim with enough evidence." *Id*. A firearm carry ban can be upheld if it "'applies only once a court has found that the [banned individual] 'represents a

credible threat to the physical safety' of another.'" *Id.* (quoting *Rahimi*, 602 U.S. at 699). "And the government here did not provide enough evidence to show that [holding an unrecognized firearm license] alone could reasonably be seen to make [its holder] an unacceptable risk of dangerousness to others by merely possessing a firearm." *Perez*, 145 F.4th at 808 (internal quotation marks omitted). "Indeed, defining a class of [firearm license holders] simply by the suggestion that they might sometimes be dangerous, without more, is insufficient for categorical disarmament." *Id.* at 808-09.

"[T]he record lacks" "any support for the claim that [unrecognized license holders], who [already hold a] public-carry permit, 'pose [such] a credible threat to the physical safety of others' that their 'Second Amendment right may . . . be burdened.'" *Worth*, 108 F.4th at 694 (quoting *Rahimi*, 602 U.S. at 700).

Ordinary, law-abiding citizens are entitled to the Second Amendment right to possess a firearm in public for self-defense. *Bruen*, 597 U.S. at 8-10. Just like Minnesota, each unrecognized state requires its licensees to be ordinary, law-abiding citizens. Indeed, these

unrecognized states also have a "shall issue" license system,[3] do not

issue licenses to anyone that is prohibited from possessing a firearm

under state or federal law,[4] and they require each license holder to

apply for the license and pass a criminal background check.[5] Most, but

not every unrecognized state, also requires an education or training

course[6]–unlike Texas, which Minnesota recently added to its reciprocity

list. *See* Texas Tex. Gov't Code § 411.172 (Texas has no education or

training requirements). Accordingly, the government cannot claim that

a lack of a firearm education and training requirement justifies refusing

to recognize some of these licenses. That justification also fails because

the First, Fourth, Fifth, Sixth, and Eighth Amendments do not require

an education or training course. Accordingly, if training is required to

exercise Second Amendment rights, then Minnesota has

---

[3] *See Bruen*, 597 U.S. at 13 n.1.

[4] Ala. Code §13A-11-75; Ariz. Rev. Stat. Ann. §13-3112; Fla. Stat. §790.06; Ga. Code Ann. §16-11-129; Ind. Code §35-47-2-3; Iowa Code §§724.7, .8; Me. Rev. Stat. Ann., Tit. 25, §2003; N. H. Rev. Stat. Ann. §§159:3, 159:3-a, 159:6, 159:12; Ore. Rev. Stat. §166.291; 18 Pa. Cons. Stat. §6109; Utah Code § 53-5a-303; Va. Code Ann. §§ 18.2-308.02, .04, .09; Wash. Rev. Code §9.41.070; Wis. Stat. §175.60; Wyo. Stat. Ann. §6-8-104.

[5] *See* n.4 *supra.*

[6] *See* n.4 *supra.*

unconstitutionally reduced it to a second-class right. *See Bruen*, 597 U.S. at 70-71.

Likewise, the district court suggested that "Minnesota's reciprocity provision makes it easier for individuals like Johnson to carry firearms in Minnesota," J. App. 99-100; R. Doc. 39, at 16-17, because they can just acquire a license online from a state on Minnesota's reciprocity list. J. App. 119; R. Doc. 45, at 16:21-24; *see also* J. App. 114; R. Doc. 45, at 11:4-15 (the government made the same suggestion). But no other constitutional right requires a license to exercise it. And Johnson, specifically, has two firearm licenses. How many licenses should he acquire before he can exercise his Second Amendment rights wherever he travels in the United States? Indeed, requiring a travel binder of firearm licenses for someone to maintain their Second Amendment rights as they travel across America undoubtedly reduces the Second Amendment to "second-class" status. *Bruen*, 597 U.S. at 70 (internal quotation marks omitted).

At bottom, Minnesota is revoking the Second Amendment rights of ordinary, law-abiding citizens without proving that they are a danger to public safety. Much worse, Minnesota is cancelling the Second

Amendment rights of a category of citizens that have already proven that they are not a danger to public safety.

Deeming "a category of people dangerous based only on belief [ ] subjugate[s] the right to bear arms 'in public for self-defense' to 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Worth*, 108 F.4th at 691 (quoting *Bruen*, 597 U.S. at 70). And if "disarming *all* drug users, simply because of who they are, is inconsistent with the Second Amendment," *United States v. Veasley*, 98 F.4th 906, 912 (8th Cir. 2024), then disarming *all* unrecognized firearm licenses holders is too. Minnesota may "have discretion to prohibit possession of firearms by a category of persons such as felons who pose an unacceptable risk of dangerousness." *United States v. Jackson*, 110 F.4th 1120, 1129 (8th Cir. 2024). But Minnesota cannot use this level of discretion against a category of persons that have proven that they are ordinary, law-abiding citizens entitled to a firearm for "individual self-defense," which "is the central component of the Second Amendment right." *Cooper*, 127 F.4th at 1098-99 (internal quotation marks omitted).

"While 'our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others[,]' Minnesota has failed to show that [unrecognized firearm license holders] pose such a threat. Accordingly, absent more, [Minn. Stat. § 624.714, subd. 16(a)] cannot be justified on a dangerousness rationale." *Worth*, 108 F.4th at 691 (quoting *Rahimi*, 602 U.S. at 700).

### B. Minnesota's reciprocity statute is not the equivalent of historic surety laws.

The *Rahimi* Court held that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." 602 U.S. at 702. Historic surety laws were an example of this type of regulation. *Id.* at 695-99.

But the district court mistakenly held that Minnesota's reciprocity statute was "like surety laws." J. App. 98; R. Doc. 39, at 15. The district court found the argument that "surety laws targeted specific individuals who were affirmatively deemed dangerous based on individualized assessment or credible threats, and only then [could government] impose[] restrictions on" Second Amendment rights to be "unavailing." J. App. 99; R. Doc. 39, at 16. The district court rejected the idea that the

reciprocity law "applies broadly and thus lacks the individualized suspicion or tailored application" like surety laws and acted as a "regulatory barrier to exercise a Second Amendment right." *Id*. Instead, the district court reiterated its belief that the reciprocity statute was akin to historic surety laws and that it applied "objective standards rather than arbitrary discretion." *Id*. Not so.

"[I]ndividual self-defense is the *central component* of the Second Amendment right." *Bruen*, 597 U.S. at 29 (internal quotation marks omitted). "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Id*. (internal quotation marks omitted). The Supreme Court "point[s] toward at least two metrics" to make this determination: "how and why the regulations burden a law-abiding citizens' right to armed self-defense." *Id*.

Relevant here, historic surety laws and, purportedly, Minnesota's reciprocity statue both burden a law-abiding citizens' right to armed self-defense to guard the public against dangerous individuals. That is the "why." "How" these laws achieve their goals is worlds apart, which

shows "surety laws [are] not a proper historical analogue for [Minnesota's] gun [reciprocity] regime." *Rahimi*, 602 U.S. at 699.

Historic surety laws "authorized magistrates to require individuals suspected of future misbehavior to post a bond. If an individual failed to post a bond, he would be jailed. If the individual did post a bond and then broke the peace, the bond would be forfeit." *Id.* at 695.

"These laws often offered the accused significant procedural protections. Before the accused could be compelled to post a bond for" carrying a weapon, "a complaint had to be made to a judge or justice of the peace by" someone with a reasonable fear "that the accused would do him harm or breach the peace." *Id.* at 696. "The magistrate would take evidence, and—if he determined that cause existed for the charge—summon the accused, who could respond to the allegations." *Id.* at 696-97. Bonds were limited to "six months at a time, and an individual could obtain an exception if he needed his arms for self-defense or some other legitimate reason." *Id.* at 697.

Therefore, "surety statutes *presumed* that individuals had a right to public carry that could be burdened only if another could make out a specific showing of reasonable cause to fear an injury, or breach of the

peace." *Bruen*, 597 U.S. at 56 (internal quotation marks omitted).

"[W]hereas [Minnesota's] law effectively presume[s] that no [out-of-state firearm license holder] ha[s] such a right, absent [showing their state's license laws are "similar" to Minnesota's law]. *Rahimi*, 602 U.S. at 699-700.

A person posted a surety bond "only when attended with circumstances giving just reason to fear that he purposes to make an unlawful use of [his firearms]." *Bruen*, 597 U.S. at 56. And even after "such a showing, the surety laws did not *prohibit* public carry in locations frequented by the general community." *Id.* The accused "could go on carrying without criminal penalty so long as he post[ed] money that would be forfeited if he breached the peace or injured others—a requirement from which he was exempt if he needed self-defense." *Id.* at 56-57 (internal quotation marks omitted).

"Thus, unlike [Minnesota's reciprocity] regime, a showing [that another state's firearm license law is "similar" was necessary] only *after* an individual was reasonably accused of intending to injure another or breach the peace." *Id.* at 57. And even if a law was "similar," it "simply avoided a fee rather than a ban" on carrying a firearm. At bottom,

"everyone started out with robust carrying rights" under surety laws "and only those reasonably accused were required to show [the laws that issued his firearm license were "similar" to Minnesota's laws] to avoid posting a bond." *Id.*

Contrary to the district court ruling, surety laws "involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Rahimi*, 602 U.S. at 699. And unlike Minnesota's reciprocity statute, surety laws did "not broadly restrict arms use by the public generally," *id.* at 698, and their burden was "of limited duration," *Id.* at 699.

Fundamentally, laws like surety laws presume "the Second Amendment right may only be burdened once [someone] has been found to pose a credible threat to the physical safety of others." *Id.* at 700. Minnesota's reciprocity statute, however, presumes an out-of-state firearm license holder is a credible threat to the physical safety of others until the government finds his license's issuing state has "similar" laws to Minnesota's firearm license statute. Indeed, Minnesota's reciprocity statute is nothing like historic surety laws. Therefore, it is unconstitutional. *Id.* at 698-700.

＊ ＊ ＊ ＊

"[O]ur Nation's tradition of firearm regulation distinguishes citizens who have been found to pose a credible threat to the physical safety of others from those who have not." *Id.* at 700. Accordingly, Minnesota can only "disarm [unrecognized firearm license holders] who present a credible threat to the physical safety of others." *Id.* But Minnesota's firearm reciprocity statute indiscriminately and indefinitely disarms law-abiding and dangerous individuals, alike. This is unconstitutional. *See id.* at 702 ("An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment.").

The district court noted that "states retain authority under their police powers to regulate who may carry firearms within their borders." J. App. 100; R. Doc. 39, at 17. But states may only regulate firearms within the bounds of the Second Amendment's "unqualified command." *Bruen*, 597 U.S. at 17 (internal quotation marks omitted).

"Minnesota has not met its burden to proffer sufficient evidence to rebut the presumption that [unrecognized firearm license holders] seeking to carry handguns in public for self-defense are protected by the

right to keep and bear arms. The [reciprocity statute, Minn. Stat. § 624.714 subd. 16(a)], violates the Second Amendment as applied to Minnesota through the Fourteenth Amendment, and, thus, is unconstitutional." *Worth*, 108 F.4th at 698.

## III. Minnesota's firearm license reciprocity statute is unconstitutionally vague, overbroad, and unreasonable.

Whether a state's firearm license is recognized under Minnesota's reciprocity law is subject to a vague and arbitrary standard. Only states with "similar" laws "governing the issuance of permits to carry weapons" are recognized under Minnesota's firearm reciprocity statute. Minn. Stat. § 624.714, subd. 16(a). But Minnesota has no workable, objective standard for what "similar" means. When asked by the district court, the government could not explain what this meant. *See* J. App. 131-32; R. Doc. 45, at 28:19—29:14. Instead, the government just recited the statute. *Id.*

Indeed, Minnesota's reciprocity statute is the functional equivalent of New York's "proper cause" firearm license system that *Bruen* found unconstitutional. *Bruen*, 597 U.S. at 16-17, 79-80. Like Minnesota's "similar" standard, "[n]o New York statute defines 'proper cause.'" *Id.* at 12. New York "authorities" managing that state's "may issue" firearm

license system had "discretion" whether to issue a firearm license or not, *id.* at 14—just like Minnesota officials have discretion whether to add states to its firearm reciprocity list or not. And the systems are equally unconstitutional.

"It is a basic principle of due process that an enactment is void for vagueness if its [terms] are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[P]recision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Therefore, "[a] state statute is unconstitutionally vague if it . . . encourages arbitrary and discriminatory enforcement." *Duhe v. City of Little Rock*, 902 F.3d 858, 863 (8th Cir. 2018) (internal quotation marks omitted).

And in the First Amendment context, which is in "accords with" and comparable to Second Amendment standards, *Bruen*, 597 U.S. at 24 (citing *Heller*, 670 U.S. at 582, 595, 606, 618, 634-35), a government official's "discretion must be guided by objective, workable standards." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 21 (2018). "Without them,"

there is potential for "unfair or inconsistent enforcement" of the law. *Id*. at 22.

Texas' status on Minnesota's reciprocity list is illustrative of Minnesota's unfair or inconsistent enforcement of its reciprocity law and a demonstration of the arbitrary discretion it uses to determine whether a state's license laws are "similar" to Minnesota's regulations. At the outset of this case, Texas was not on Minnesota's reciprocity list and a plaintiff with a Texas firearm license was a party to this litigation. *See* n.2 *supra*. Subsequently, Minnesota added Texas to reciprocity list without *any* change to Texas' firearm license laws. The government explained that "Texas is now on the list following the Supreme Court's denial of cert. in *Worth*." *See* J. App. 107; R. Doc. 45, at 4:23-25.

In *Worth*, this Court struck down the Minnesota firearm license requirement that all applicants be at least 21 years old and, subsequently, allowed 18-year-old citizens obtain a license. 108 F.4th at 698. Minnesota's answer to the district court's question about Texas' reciprocity list status, thus, gave the impression that Texas allowed 18-

year-old individuals to obtain firearm licenses, the *Worth* decision made the two states' laws "similar," and that allowed Texas to join the list.

But Texas requires firearm license applicants to be 21 years old too. *See* Tex. Gov't Code § 411.172(a)(2). And unlike Minnesota, Texas does not require any firearm education or training course. *See* Tex. Gov't Code § 411.172. In fact, Texas is a "constitutional carry" state, which "allow[s] certain individuals to carry handguns in public in the state without any permit whatsoever." *Bruen*, 597 U.S. at 13 n.1. Yet, Minnesota concluded that Texas has "similar" firearm license laws and added it to the reciprocity list.

Clearly, the *Worth* decision had nothing to do with Minnesota adding Texas to its reciprocity list. And without any changes to Texas's firearm license laws, it was added to Minnesota's firearm reciprocity list without a "similar" firearm training requirement or, as a "constitutional carry" state, any requirement for a firearm license at all.

Texas's firearm license laws are not "similar" to Minnesota's firearm license regulations. Its presence on Minnesota's reciprocity list illustrates that there is no objective standard for determining whether another state's firearm license law is "similar" under Minn. Stat.

§ 624.714, subd. 16(a). And because the text of Minnesota's reciprocity statute causes it to be arbitrarily, unfairly, and inconsistently enforced, it is unconstitutional. *See Duhe*, 902 F.3d at 863.

Also, recall that the government recommended that Johnson acquire a firearm license online from Kentucky to solve his Minnesota reciprocity problem. *See* J. App. 114; R. Doc. 45, at 11:4-15. This suggestion is as unreasonable as it is arbitrary for several reasons. First, Kentucky not only has license reciprocity with Minnesota but also with Florida and Georgia, which is where Johnson is already licensed.[7] It is unreasonable to require Johnson to obtain a license from a state that already has reciprocity with the licenses he already holds. Next, like Texas, Kentucky is a "constitutional carry" state. *See Bruen*, 597 U.S. at 13 n.1; Ky. Rev. Stat. § 237.109. Therefore, it is also unreasonable to require Johnson to obtain a license from a state that does not require a license to carry a firearm. Next, that constitutional carry states, e.g., Kentucky and Texas, have firearm license laws that are "similar" to Minnesota's license laws is proof that Minnesota's

---

[7] *See CCDW Reciprocity*, Kentucky State Police, https://wp.kentuckystatepolice.ky.gov/ccdw/ccdw-home/ccdw-reciprocity (last visited Dec. 3, 2025) [https://tinyurl.com/yrex7nyv].

reciprocity statute has arbitrary standards. Indeed, Johnson can carry his firearm in Kentucky or Texas with or without his current licenses but not in Minnesota, which has reciprocity with Kentucky and Texas. Likewise, that states, e.g., Kentucky and Texas,[8] have firearm licenses laws that are "similar" to Minnesota's license laws but also have license reciprocity with states that Minnesota does not recognize, e.g., Florida and Georgia, is proof that Minnesota's reciprocity statute has arbitrary standards.

Furthermore, Minnesota's reciprocity statute does not serve any government interest. The district court held that the interest the reciprocity statute purportedly serves is "to ensure that only law-abiding, responsible individuals bear arms" in Minnesota. J. App. 98; R. Doc. 39, at 15. But everyone that holds a firearm license from an unrecognized state had to demonstrate that they were law-abiding, responsible individuals to obtain their license. Indeed, all unrecognized states require a criminal background check[9] and they do not issue a

---

[8] *See State Reciprocity Information*, Texas Dept. of Public Safety, https://www.dps.texas.gov/section/handgun-licensing/state-reciprocity-information (last visited Dec. 3, 2025) [https://tinyurl.com/mr98bd38].
[9] *See* n.4 *supra.*

license to anyone that is prohibited from possessing a firearm under state or federal law.[10] And, unlike recently recognized Texas, most unrecognized states also require some type of firearm safety or training course.[11]

"The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense. It is this balance—struck by the traditions of the American people—that demands . . . unqualified deference." *Bruen*, 597 U.S. at 26 (quoting *Heller*, 554 U.S. at 635).

Unrecognized license holders are law-abiding, responsible citizens that want to bear arms for self-defense. Their interests demand deference. *Id.* Their unrecognized licenses serve Minnesota's interest in ensuring that only law-abiding, responsible individuals bear arms in Minnesota,[12] and more than recognized Texas licenses do in some cases.

---

[10] *See* n.4 *supra.*

[11] *See* n.4 *supra*; Texas Tex. Gov't Code § 411.172.

[12] In addition to their public safety standards, the unrecognized licenses' age requirements vary from 18 to 21. *See* n.4 *supra.* But this is irrelevant under *Worth*, 108 F.4th at 698. Status in Minnesota's criminal gang database is also immaterial for other states (whether their firearm license is recognized or not) because the system is

Refusing to recognize these firearm licenses serves no government interest. And "[a] rule whose fair enforcement" does not serve any government interest "is not reasonable" or constitutional. *Mansky*, 585 U.S. at 19.

## CONCLUSION

Minnesota's firearm license reciprocity statute is unconstitutional. The government did not demonstrate that the law is consistent with the Nation's historic tradition of firearm regulation with a record of evidence as *Bruen* commands. The district court erroneously held that ordinary, law-abiding citizens can be disarmed without a judicial showing that they are a danger to society and that Minnesota's reciprocity statute is like historic surety laws. And the reciprocity statute itself grants the government arbitrary authority to recognize other state's firearm license laws without serving any government interest. Consequently, the decision below should be reversed.

---

exclusively used, informed, and operated by Minnesota. *See* Minn. Stat. § 299C.091.

Respectfully Submitted,

/s/ Ryan Morrison
Ryan Morrison
Timothy Kilcullen
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
rmorrison@ljc.org
tkilcullen@ljc.org
*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,034 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), according to the word count as calculated by Microsoft Word for Microsoft Office 365, which was used to prepare this brief.

A virus detection program was run on the brief and addendum PDF files and no virus was detected.

/s/ Ryan Morrison
*Counsel for Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF System. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Ryan Morrison
*Counsel for Appellant*

# ADDENDUM

District Court Opinion and Order

Brief Excerpts from the Motion to Dismiss Hearing Transcript