No. 25-3036

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

Jeffrey M. Johnson, Sr.,

Appellant,

vs.

Bob Jacobson, in his official capacity as Commissioner of the
Minnesota Department of Public Safety,

Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

**APPELLEE'S BRIEF**

OFFICE OF THE ATTORNEY GENERAL
State of Minnesota

MADELEINE DEMEULES
AMANDA PRUTZMAN
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, MN 55101-2131
(651) 300-6807 (DeMeules)
(651) 300-7923 (Prutzman)
madeleine.demeules@ag.state.mn.us
amanda.prutzman@ag.state.mn.us

*Attorneys for Appellee Bob Jacobson,
Commissioner of the Minnesota Department
of Public Safety*

## SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT

Appellant Jeffrey M. Johnson, Sr., brought this civil rights case against Appellee Bob Jacobson, Commissioner of the Minnesota Department of Public Safety. In the district court proceedings, Johnson challenged a provision of Minnesota's shall-issue firearm permitting law that provides reciprocity to firearm permits issued by other states with similar firearm permitting laws (the Reciprocity Provision). Johnson alleged that the Reciprocity Provision violates the Second Amendment to the United States Constitution.

Below, the Commissioner moved for dismissal with prejudice. The district court granted that motion, concluding that Johnson's challenge failed at Step Two of the two-step test set forth in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2024).

The Commissioner agrees with Johnson that oral argument would be beneficial. *See* Br. 1. The legal questions at issue in this appeal stand to impact public safety throughout Minnesota. If granted, the Commissioner respectfully requests that oral argument be held in St. Paul, Minnesota, and be 20 minutes per side.

# TABLE OF CONTENTS

Page

SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT .....................i

TABLE OF AUTHORITIES ....................................................................................iv

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF ISSUES ....................................................................................2

STATEMENT OF THE CASE.................................................................................3

I.    MINNESOTA REQUIRES PEOPLE WHO WISH TO CARRY FIREARMS IN
      PUBLIC TO OBTAIN A PERMIT. ..........................................................................3

II.   JOHNSON WISHES TO CARRY A FIREARM IN MINNESOTA BUT DOES NOT
      HAVE A PERMIT FROM MINNESOTA OR A STATE WITH RECIPROCITY—
      AND DOES NOT WISH TO OBTAIN AN ACCEPTABLE PERMIT. ...........................4

SUMMARY OF ARGUMENT ...............................................................................5

ARGUMENT ...........................................................................................................6

I.    THE COURT NEED NOT REACH BRUEN'S TEST BECAUSE THE FACIAL
      NATURE OF JOHNSON'S CHALLENGE DOOMS HIS CLAIM. ...............................7

      A.    The Facial Nature of Johnson's Challenge Means He Must Show
            the Reciprocity Provision Is Unconstitutional in Every
            Application. ...........................................................................................8

      B.    Johnson Concedes That the Reciprocity Provision Does Not
            Violate the Second Amendment for at Least Some Groups of
            People, So the Reciprocity Provision Is Not Facially
            Unconstitutional. ..................................................................................9

II.   ON THE MERITS, JOHNSON'S SECOND AMENDMENT CHALLENGE FAILS. .......11

      A.    The Second Amendment Is a Poor Fit for Johnson's Claim...............11

      B.    If the Court Treats Mr. Johnson's Challenge as an Actionable
            Second Amendment Claim, the Reciprocity Provision Is
            Constitutional Under Bruen. ................................................................13

1. Johnson's claim hinges on interstate travel, which is not protected under Step One of *Bruen*............................................14

2. Alternatively, Minnesota's presumptively constitutional permitting regime is consistent with any Second Amendment conduct under Step One of *Bruen*.......................15

    a. The Reciprocity Provision is functionally equivalent to Minnesota's shall-issue permitting regime. ............................................................15

    b. Minnesota's shall-issue permitting regime is presumptively constitutional. It does not meaningfully burden Johnson's Second Amendment rights. ........................................18

3. Minnesota's law also prevails at Step Two of *Bruen* because it is consistent with surety laws, which are part of the Nation's historical tradition of firearm regulations. ...........23

III. JOHNSON'S NEW "VAGUENESS" CLAIMS ARE NOT PROPERLY BEFORE THE COURT; THEY ALSO ARE MERITLESS. ....................................................28

CONCLUSION.......................................................................................31

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Elite Precision Customs LLC v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*
__ F. Supp. 3d __, 2025 WL 2778498 (N.D. Tex. Sep. 30, 2025) ..................... 21

*B&L Prods., Inc. v. Newsom*
104 F.4th 108 (9th Cir. 2024) ............................................................. 21

*Cal. Rifle & Pistol Ass'n. Inc. v. L.A. Cnty. Sheriff's Dept.*
745 F. Supp. 3d 1037 (C.D. Cal. 2024) ......................................... 12, 17

*Culp v. Raoul*
921 F.3d 646 (7th Cir. 2019) .............................................................. 12

*District of Columbia v. Heller*
554 U.S. 570 (2008) .................................................................... Passim

*Duhe v. City of Little Rock*
902 F.3d 858 (8th Cir. 2018) ......................................................... 28, 29

*Eagle Tech. v. Expander Arms., Inc.*
783 F.3d 1131 (8th Cir. 2015) ....................................................... 28, 30

*F.C.C. v. Fox Television Stations, Inc.*
567 U.S. 239 (2012) .......................................................................... 28

*Fleck v. Wetch*
937 F.3d 1112 (8th Cir. 2019) ............................................................ 28

*Frey v. City of New York*
157 F.4th 118 (2d Cir. 2025) ......................................................... 17, 18

*Gatewood v. City of O'Fallon*
70 F.4th 1076 (8th Cir. 2023) ................................................. 7, 20, 26, 30

iv

*Giambalvo v. Suffolk County*
    155 F.4th 163 (2d Cir. 2025)............................................................ 20

*Maryland Shall Issue, Inc. v. Moore*
    116 F.4th 211 (4th Cir. 2024) .......................................... 16, 20, 22

*McRorey v. Garland*
    99 F.4th 831 (5th Cir. 2024) ........................................................ 21

*Mills v. New York City*
    758 F. Supp. 3d 250 (S.D.N.Y. 2024)............................................ 21

*Minn. Voters All. v. Mansky*
    585 U.S. 1 (2018) .......................................................................... 29

*Mitchell v. Dakota Cnty. Soc. Servs.*
    959 F.3d 887 (8th Cir. 2020).............................................. 2, 28, 30

*Mitchell v. St. Louis County*
    160 F.4th 950 (8th Cir. 2025) ........................................................ 6

*N.Y. State Firearms Ass'n v. James*
    157 F.4th 232 (2d Cir. 2025)........................................................ 21

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*
    597 U.S. 1 (2024) ................................................................... Passim

*Olson v. Fairview Health Servs. of Minn.*
    831 F.3d 1063 (8th Cir. 2016)........................................................ 7

*Rocky Mountain Gun Owners v. Polis*
    121 F.4th 96 (10th Cir. 2024) ...................................................... 21

*Selective Way Ins. Co. v. CSC Gen. Contractors, Inc.*
    994 F.3d 952 (8th Cir. 2021)........................................................... 7

*Smith v. District of Columbia*
    568 F. Supp. 3d 55 (D.D.C. 2021) .............................................. 12

*United States v. Bena*
664 F.3d 1180 (8th Cir. 2011) .............................................................. 19

*United States v. Charles*
159 F.4th 545 (8th Cir. 2025) ........................................... 8, 13, 14, 15

*United States v. Jackson*
110 F.4th 1120 (8th Cir. 2024) ........................................ 9, 19, 20, 23

*United States v. Libertad*
681 F. Supp. 3d 102 (S.D.N.Y. 2023) .................................................. 21

*United States v. Rahimi*
602 U.S. 680 (2024) ................................................................... Passim

*United States v. Stephens*
594 F.3d 1033 (8th Cir. 2010) .............................................................. 8

*United States v. Veasley*
98 F.4th 906 (8th Cir. 2024) ..................................................... 2, 8, 9, 10

*Worth v. Jacobson*
108 F.4th 677 (8th Cir. 2024) ........................................................ 13, 23

**State Cases**

*Commonwealth v. Marquis*
252 N.E.3d 991 (Mass. 2025) ...................................................... 12, 25

**Federal Statutes**

42 U.S.C. § 1983 .................................................................................. 4

U.S. Const. amend. II .................................................................... 2, 15

U.S. Const. amend. XIV ....................................................................... 2

**State Statutes**

Minn. Stat. § 624.714 ..................................................................... 2, 19

Minn. Stat. § 624.714, subd. 1a ................................................................... 3

Minn. Stat. § 624.714, subd. 2 ............................................... 3, 12, 16, 24

Minn. Stat. § 624.714, subd. 3 ..................................................................... 3

Minn. Stat. § 624.714, subd. 6 ........................................................... passim

Minn. Stat. § 624.714, subd. 16 ............................................... 2, 3, 4, 16

**Other Authorities**

A. Lefroy, Anglo-Saxon Period of English Law Part II
  26 Yale L. J. 388 (1917) ...................................................................... 24

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Johnson's federal constitutional claims under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291 to review the district court's September 11, 2025 order granting the motion to dismiss filed by the Commissioner and the corresponding judgment. *See* Joint Appendix (J.App.) 84-101 (order); R. Doc 39, at 1-18; J.App. 102 (judgment); R. Doc. 40.

Judgment was entered on September 12, 2025. J.App. 102; R. Doc. 40. Johnson timely filed a notice of appeal on October 10, 2025. J.App. 103; R. Doc 41.

## STATEMENT OF ISSUES

This appeal presents three issues.

1. **Has Johnson shown that Minnesota's firearm Reciprocity Provision is unconstitutional in every possible application?**

Minn. Stat. § 624.714, subd. 16
*United States v. Veasley*, 98 F.4th 906 (8th Cir. 2024)
*United States v. Rahimi*, 602 U.S. 680 (2024)

2. **Does the Reciprocity Provision (and by extension, Minnesota's shall-issue permitting regime) burden Johnson's Second Amendment rights? If so, is Minnesota law consistent with the Nation's historical tradition of firearm regulation?**

U.S. Const. amend. II
Minn. Stat. § 624.714
*New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022)

3. **Did Johnson forfeit his new "vagueness" claim by failing to raise it until these appellate proceedings?**

U.S. Const. amend. XIV
*Mitchell v. Dakota County Social Services*, 959 F.3d 887 (8th Cir. 2020)

## STATEMENT OF THE CASE

The Commissioner first sets forth the relevant statutory background, followed by the factual allegations pleaded in Johnson's complaint.

### I. MINNESOTA REQUIRES PEOPLE WHO WISH TO CARRY FIREARMS IN PUBLIC TO OBTAIN A PERMIT.

Minnesota law requires everyone who wishes to carry a gun in public to obtain a permit. Minn. Stat. § 624.714, subd. 1a. Anyone can apply for a Minnesota permit to carry, including Minnesotans and non-Minnesotans. *Id.* subd. 2. The only difference is that Minnesotans must apply "to the county sheriff where the applicant resides," while nonresidents "may apply to any sheriff." *See id.* Applications must be made in person and cost no more than $100. *Id.* subd. 3(e), (f).

The sheriff "must issue" a permit to any applicant within 30 days, unless an applicant does not meet the statutory criteria or "there exists a substantial likelihood that the applicant is a danger to self or to the public" if given a permit. *Id.* subd. 6(a).

In addition to permits issued by Minnesota, the Commissioner recognizes firearm permits from certain states as reciprocal. *Id.* subd. 16(a) (the Reciprocity Provision). The Commissioner must annually establish and publish the list of states with laws that are not similar to Minnesota's, and that list must be published online. *See id.* Anyone who holds a permit from a state can rely on that permit in Minnesota unless that other state is noted on this list of states with dissimilar laws. *Id.*

**II. JOHNSON WISHES TO CARRY A FIREARM IN MINNESOTA BUT DOES NOT HAVE A PERMIT FROM MINNESOTA OR A STATE WITH RECIPROCITY—AND DOES NOT WISH TO OBTAIN AN ACCEPTABLE PERMIT.**

Appellant Jeffrey M. Johnson, Sr., is a resident of Georgia. J.App. 4; R. Doc. 1, at 4. Johnson works as a long-haul truck driver. J.App. 13; R. Doc. 1, at 13. This work brings him to Minnesota several times each year. J.App. 13, 15; R. Doc. 1, at 13, 15.

Johnson is a "platinum member" of the National Rifle Association and the United States Concealed Carry Association J.App. 4; R. Doc. 1, at 14. He has firearm permits from Florida and Georgia. J.App. 13; R. Doc. 1, at 13. He owns and regularly carries a firearm, including when driving his truck for work. J.App. 13-14; R. Doc. 1, at 13-14.

Johnson does not have a firearm permit issued by Minnesota, though he alleges that he is not disqualified from obtaining one. J.App. 14; R. Doc. 1, at 14. Johnson does not wish to obtain a permit from Minnesota or from any other state that enjoys permit reciprocity under Section 624.714, subd. 16. He alleges that it is "too costly, time consuming, and burdensome" to obtain a permit from Minnesota or the other states he travels through. J.App. 18; R. Doc. 1, at 18.

Johnson sued the Commissioner under 42 U.S.C. § 1983. He pleaded one claim under the Second Amendment, alleging that his rights are violated because Minnesota does not currently recognize his Georgia and Florida permits.

J.App. 16-18; R. Doc. 1, at 16-18. The Commissioner sought dismissal in full and with prejudice, which the district court granted. Appellant's Addendum (App. Add.) 2-19; J.App. 84-101; R. Doc. 39, at 1-18. Johnson now appeals.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's dismissal of Johnson's complaint because Minnesota's Reciprocity Provision is constitutional.

Johnson's challenge is facial. Thus, the Court need not even reach *Bruen*'s test, because Johnson has not—and cannot—show that this law is unconstitutional in all its applications. He concedes that the law can be constitutionally applied to people who hold permits from Minnesota or from reciprocal states, as well as to people who are dangerous. *See, e.g.*, Appellant's Brief (Br.) 10, 18-19.[1] These concessions doom his challenge.

If the Court nevertheless reaches *Bruen* and its test, the Reciprocity Provision still passes constitutional muster. Johnson's challenge is best understood as an attack on Minnesota's shall-issue permitting regime, which is presumptively constitutional under *Bruen*. Applying *Bruen*'s guidance on such regimes, the Court can and should dispose of Johnson's challenge at Step One. But even if the Court proceeds to Step Two, Johnson's challenge still fails. Minnesota law matches the "why" and "how"

---

[1] The Commissioner uses the original pagination when citing Johnson's brief, not the page numbers generated by ECF.

of historical analogues, including surety laws and their common-law predecessors. This match demonstrates that Minnesota law fits comfortably within the Nation's historical tradition of firearm regulation.

Finally, Johnson attempts for the first time in this appeal to raise two new challenges to the Reciprocity Provision, arguing that it is void for vagueness and overbroad. These Fourteenth and First Amendment claims were never pleaded, argued, or ruled on below. The Court should reject Johnson's attempt to raise them now.

## ARGUMENT

This Court reviews the district court's dismissal of Johnson's constitutional challenge de novo. *See Mitchell v. St. Louis County*, 160 F.4th 950, 956-57 (8th Cir. 2025).

Johnson's challenge fails for three reasons. First, Johnson cannot carry the heavy burden that his facial challenge requires. Second, the challenge, which is a poor fit for the Second Amendment, does not pass the first step of *Bruen*'s test. Third, if the Court reaches *Bruen*'s second step, the Reciprocity Provision passes muster because it is equivalent to Minnesota's shall-issue permitting scheme, which is presumptively constitutional and consistent with historical analogues.

## I. THE COURT NEED NOT REACH *BRUEN*'S TEST BECAUSE THE FACIAL NATURE OF JOHNSON'S CHALLENGE DOOMS HIS CLAIM.

It is undisputed that Johnson's Second Amendment challenge to the Reciprocity Provision is facial. *See* Br. 1; *id.* 7 (discussing Johnson and "similarly situated individuals"). Johnson argued below that he had also raised an as-applied challenge, but the district court rejected that argument. *Compare* J.App. 64-65; R. Doc. 19, at 21-22 *with* App. Add. 8-9; J.App. 90-91; R. Doc. 39, at 7-8. Johnson has not briefed any challenge to that conclusion by the district court, so he has waived any argument on appeal that his suit includes an as-applied challenge. *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1073 (8th Cir. 2016); *see also Gatewood v. City of O'Fallon*, 70 F.4th 1076, 1080 (8th Cir. 2023) (declining to consider issues raised for first time on reply).

Johnson's challenge to the Reciprocity Provision is facial, so he must meet the high standard this type of challenge demands. He cannot, so his challenge fails.[2]

---

[2]  The Commissioner raised this argument below. *See* J.App. 32-35, 71-73; R. Docs. 15, at 7-10, & 20, at 5-7; *see also* App. Add. 8-9; J.App. 90-91; R. Doc. 39, at 7-8. The district court did not rely on this ground for its decision, but this Court may affirm on any grounds supported by the record. *See Selective Way Ins. Co. v. CSC Gen. Contractors, Inc.*, 994 F.3d 952, 955-56 (8th Cir. 2021).

**A.   The Facial Nature of Johnson's Challenge Means He Must Show the Reciprocity Provision Is Unconstitutional in Every Application.**

A facial challenge is a claim that a law or policy "is unconstitutional in *all* its applications," regardless of "individual circumstances." *United States v. Veasley*, 98 F.4th 906, 909 (8th Cir. 2024) (emphasis original and internal quotation omitted). The stakes of such challenges are high, so the bar for them is high as well. *See United States v. Stephens*, 594 F.3d 1033, 1037 (8th Cir. 2010) (describing how facial challenges short circuit the democratic process).

To prevail on a facial challenge, a litigant must show that the law they challenge is unconstitutional in every circumstance. *Veasley*, 98 F.4th at 909. To successfully defend a facial challenge, however, all the government must do is identify some constitutional applications, the challenger's circumstances notwithstanding. *See id*. The Supreme Court enforces this high standard in the Second Amendment context, as does this Court. *See United States v. Rahimi*, 602 U.S. 680, 693 (2024) (describing facial challenge as the "most difficult challenge to mount successfully"); *Veasley*, 98 F.4th at 909 (affirming dismissal of facial challenge under Second Amendment); *United States v. Charles*, 159 F.4th 545, 546-48 (8th Cir. 2025) (same).

**B.      Johnson Concedes That the Reciprocity Provision Does Not Violate the Second Amendment for at Least Some Groups of People, So the Reciprocity Provision Is Not Facially Unconstitutional.**

Johnson concedes that the Reciprocity Provision is constitutional when applied to people with gun licenses from Minnesota and states that enjoy reciprocity with Minnesota. He states, "the [Reciprocity Provision] allows recognized firearm licenses holders to exercise their Second Amendment rights in Minnesota." Br. 10. By conceding that the Reciprocity Provision is constitutional in these applications, Johnson seals the fate of his challenge.

Johnson also appears to concede that the Reciprocity Provision is constitutional when applied to people who are dangerous. In his brief, Johnson argues that this law's application to "ordinary, law-abiding" individuals is a sign of its constitutional infirmity. Br. 16, 17, 19, 21, 22. At the same time, he concedes that a firearm ban "can be upheld" if the ban applies to someone that a court has found "represents a credible threat to the physical safety of another." *Id.* 18-19 (quoting *Rahimi*, 602 U.S. at 691); 22 (quoting *United States v. Jackson*, 110 F.4th 1120, 1129 (8th Cir. 2024) (Colloton, C.J.) (finding Minnesota could constitutionally disarm an individual based on history of nonviolent drug convictions)). Johnson makes no effort to square these two parts of his argument, focusing on himself and "similarly situated individuals" to the exclusion of individuals who present credible safety threats. *Id.* 7; *contra Veasley*, 98 F.4th at 909 (noting the difference in

constitutional analysis between someone with a history of drug convictions and a proverbial "frail and elderly grandmother" who used medical marijuana).

Because his challenge is facial, Johnson must grapple with the Reciprocity Provision's application to individuals like the offender in *Jackson*. These individuals comprise a category of people who may be disqualified from possessing firearms or, at the very least, disarmed to address their "unacceptable risk of dangerousness." 110 F.4th at 1128-29; *accord Veasley*, 98 F.4th at 909 (affirming constitutionality of disarming individuals who use or are addicted to controlled substances). Applying the Reciprocity Provision to this category of people would not violate the Second Amendment because these individuals lack a Second Amendment right to firearms. Thus, under *Jackson* and *Veasley*, the Reciprocity Provision is constitutional as applied to individuals who are dangerous—either presumptively or because a court has found them to be so.

Johnson's inability to address these constitutional applications of the Reciprocity Provision is fatal to his challenge. Under this Court's standard for facial challenges, he has not—and cannot—show that the Reciprocity Provision "is unconstitutional in *all* its applications." *Veasley*, 98 F.4th at 909 (emphasis original); *accord Charles*, 159 F.4th at 5448. The Court's analysis can end here.

## II. ON THE MERITS, JOHNSON'S SECOND AMENDMENT CHALLENGE FAILS.

Johnson's challenge is facial but he has failed to carry his burden, so there is no need for the Court to reach *Bruen* or its test. But if the Court does, Johnson's challenge still fails on the merits.

### A. The Second Amendment Is a Poor Fit for Johnson's Claim.

The Court should not reach *Bruen* or its test because the Second Amendment does not contemplate the sort of challenge that Johnson has made. But even if it did, all roads lead to Minnesota's shall-issue permitting regime, a law that the Supreme Court has suggested is presumptively constitutional, not the Reciprocity Provision in isolation.

Johnson's challenge does not sound in the Second Amendment. The core of his alleged injury is that Minnesota impinges on his ability to travel across state lines by treating his Florida and Georgia permits differently than it treats permits from Minnesota and reciprocal states. His brief describes this injury by asserting that Minnesota law "allows recognized firearm license holders to exercise their Second Amendment rights in Minnesota," but "forces firearm license holders from unrecognized states to disarm at the state line." Br. 10. This sort of injury—one rooted in allegations of interstate travel and differential treatment—does not implicate the Second Amendment. Johnson has nevertheless tried to force the square peg of his challenge into the Second Amendment's round hole.

Johnson's approach also contradicts the plain text of Minnesota's law. Rather than ban nonresidents from carrying firearms in Minnesota, Minnesota expressly allows nonresidents to apply for a permit to carry. Minn. Stat. § 624.714, subd. 2(a) (allowing nonresidents to apply for a Minnesota permit with "any sheriff"). Minnesota law—and Johnson's challenge—thus differs from the laws at issue in other nonresident permitting lawsuits. In those suits, courts have observed that the laws at issue left nonresidents with no recourse at all. *See, e.g.*, *Cal. Rifle & Pistol Ass'n. Inc. v. L.A. Cnty. Sheriff's Dept.*, 745 F. Supp. 3d 1037, 1063 (C.D. Cal. 2024) (law refusing to recognize out-of-state firearm licenses); *Smith v. District of Columbia*, 568 F. Supp. 3d 55, 63-64 (D.D.C. 2021) (nonresident ban that provided no avenue for nonresidents to legally carry firearms in the District of Columbia).

In contrast, Minnesota's law is like laws from states that provide an avenue for nonresidents to obtain firearm permits. *See, e.g.*, *Commonwealth v. Marquis*, 252 N.E.3d 991, 1007-14 (Mass. 2025) (upholding Massachusetts law that allowed nonresidents to apply for permits to carry); *cf. id.* 1014-22 (also considering equal protection and privilege and immunities theories).

If this Court were to follow Johnson's lead, it would functionally articulate a new dimension of the Second Amendment—one that no other federal court appears to recognize. *Cf., e.g.*, *Culp v. Raoul*, 921 F.3d 646, 655 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 109 (2020) (observing risk of regulatory race to the bottom if one state is

constitutionally obligated to defer to other states' regulations). It would also have to ignore the plain text of Minnesota law. The Court should avoid wading into these problematic waters. Instead, it should dispose of this case as attempting to allege claims about travel and discrimination that were never properly pleaded or pursued.

**B.     If the Court Treats Mr. Johnson's Challenge as an Actionable Second Amendment Claim, the Reciprocity Provision Is Constitutional Under *Bruen*.**

The controlling test for Second Amendment claims is the two-step *Bruen* framework. *See* 597 U.S. at 17; *Charles*, 159 F.4th at 547 (applying *Bruen*); *Worth v. Jacobson*, 108 F.4th 677, 687-88 (8th Cir. 2024). Courts first assess whether the Second Amendment's plain text covers an individual's conduct. *Charles*, 159 F.4th at 547. If it does, then the government must show that the challenged law is consistent with the Nation's historical tradition of firearm regulation. *Id.*

Minnesota's firearm law is constitutional. It passes muster at Step One of *Bruen* because the Second Amendment does not protect interstate travel and because Minnesota's law does not implicate the Second Amendment any differently than a shall-issue permitting regime. This Court recently appeared to agree with the Supreme Court's dicta in *Bruen* that shall-issue regimes are presumptively constitutional, which dooms Johnson's claim at Step One. Alternatively, at Step Two of *Bruen*, Minnesota's firearm law is consistent with the Nation's history and

tradition of firearm regulation. Conditioning an individual's ability to carry firearms in public on that individual's compliance with a safety-based permitting requirement is analogous to the "why" and "how" of historical firearm regulation.

**1. Johnson's claim hinges on interstate travel, which is not protected under Step One of *Bruen*.**

Step One of *Bruen* asks whether the plain text of the Second Amendment covers an individual's conduct. *Charles*, 159 F.4th at 547. The answer to this question requires courts to consider the amendment's "normal and ordinary meaning," as well as its "historical background." *Bruen*, 590 U.S. at 20 (citing *District of Columbia v. Heller*, 554 U.S. 570, 578 (2008)).

Before reaching the Second Amendment's text and history, however, the Court must identify precisely what conduct Johnson has alleged. The allegations in the complaint establish that his desired course of conduct is to travel across state lines and bypass various states' permitting requirements when doing so. He alleges:

- "Individuals do not lose their constitutional rights simply by crossing into another state." J.App. 2 ¶ 3 R. Doc. 1, at 2 ¶ 3;

- "It is too costly, time consuming, and burdensome for Plaintiff to obtain a firearm permit from all contiguous states. Plaintiff Johnson cannot afford the cost of firearm permit fees in every state." J.App. 17 ¶ 62; R. Doc. 1, at 17 ¶ 62; and

- "Plaintiffs travel for a living and live on the road, constantly driving through the 48 contiguous states. It is too costly, time consuming, and onerous . . . to have to obtain a firearm permit from every state they travel to or through." J.App. 18 ¶ 66; R. Doc. 1, at 18 ¶ 66.

The core conduct at issue is Johnson's interstate travel. The Second Amendment, by contrast, protects the right to "keep and bear Arms." U.S. Const. amend. II; *see Charles*, 159 F.4th at 547. For that reason, Johnson's challenge does not even trigger Step One of *Bruen*.

**2.   Alternatively, Minnesota's presumptively constitutional permitting regime is consistent with any Second Amendment conduct under Step One of *Bruen*.**

If the Court concludes that Johnson's challenge implicates his right to carry a handgun for self-defense in public, then the Commissioner agrees that such conduct falls within the scope of the Second Amendment. *See Heller*, 554 U.S. at 595; App. Add. 12-15; J.App. 94-97; R. Doc. 39, at 11-14. Before moving to *Bruen*'s second step, however, the Court must properly construe the Reciprocity Provision.

**a.   The Reciprocity Provision is functionally equivalent to Minnesota's shall-issue permitting regime.**

There is no daylight between the Reciprocity Provision and Minnesota's shall-issue permitting regime. Minnesota "must issue" a permit to anyone who applies, except those who fail to meet objective criteria, so its permitting regime qualifies as

shall-issue. Minn. Stat. § 624.714, subd. 2(b); *see Bruen*, 597 U.S. at 13-15; *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211, 221-22 (4th Cir. 2024) (en banc), *cert. denied* 145 S. Ct. 1049 (2025) (describing hallmarks of a shall-issue regime). Properly understood, the Reciprocity Provision simply effectuates this shall-issue regime's safety-based requirement that anyone who wishes to carry a firearm in public first obtain a permit.

The Reciprocity Provision does so by providing an additional way for people to comply with Minnesota's permit requirement. If someone does not want to—or cannot—apply for a Minnesota permit, that individual may seek a permit from any state that enjoys reciprocity with Minnesota. *See* Minn. Stat. § 624.714, subd. 16. Rather than limiting who may carry a firearm in Minnesota, the Reciprocity Provision broadens the ways for people to obtain an acceptable permit and carry firearms in Minnesota.

None of Johnson's arguments to the contrary are persuasive. First, Johnson could simply apply for a Minnesota permit. He has not, even though no part of Minnesota law requires him or anyone else to use the Reciprocity Provision. Nor does this Provision or any other part of Minnesota law require him to be a Minnesota resident in order to obtain a Minnesota permit. *See* Minn. Stat. § 624.714, subd. 2(a) (explaining how nonresidents may apply for a Minnesota permit); *contra* Br. 17 (contending, incorrectly, that the Reciprocity Provision allows people from other

states to carry firearms in Minnesota "*only if*" the issuing state's laws are similar (emphasis original)); *Cal. Rifle & Pistol Ass'n*, 745 F. Supp. 3d at 1047 (analyzing California law that did not allow non-residents to apply for a firearm permit). Indeed, Johnson alleges that he is qualified for a Minnesota permit. *See* J.App. 14 ¶ 50; R. Doc. 1, at 14 ¶ 50. Rather than the Reciprocity Provision, it is Johnson's own unwillingness to obtain an acceptable permit that has burdened his ability to carry in Minnesota.

Johnson is also incorrect that the Reciprocity Provision adds extra burdens beyond Minnesota's baseline permit requirement, which he concedes is constitutional. *See* Br. 15-16. The flaw in his logic is evident when considering his situation without the Reciprocity Provision. If Minnesota dispensed with the Reciprocity Provision altogether and declined to accept permits from other states, Johnson would still have to obtain a permit from Minnesota because his Florida and Georgia permits would be just as invalid in Minnesota as they are now. Without the Reciprocity Provision, Johnson's position would be unchanged: he would still lack an acceptable permit and be unable to carry a firearm in Minnesota unless and until he obtains an acceptable permit.

An example of a different permitting regime illustrates this point. In New York, people with a permit from anywhere in the state other than New York City must obtain an additional "special permit" to carry firearms in the City. *See Frey v.*

*City of New York*, 157 F.4th 118, 140-41 (2d Cir. 2025). The Second Circuit found that even this mandatory additional application did not impose any Second Amendment burden. *Id.* ("The only potential constitutional harm Plaintiffs suggest they have suffered is that . . . they now must endure another application process to carry within the City limits. We are not persuaded that such a theory can overcome the presumption of constitutionality [of New York's shall-issue licensing regime].").

Here, by contrast, the Reciprocity Provision does not require anything extra from Johnson. Any additional burden he perceives is a product of his interstate travel and desire to use an out-of-state permit—not the Reciprocity Provision. For these reasons, the Reciprocity Provision is functionally equivalent to Minnesota's shall-issue permitting regime. Any *Bruen* analysis must therefore proceed on that basis.

> **b.** **Minnesota's shall-issue permitting regime is presumptively constitutional. It does not meaningfully burden Johnson's Second Amendment rights.**

Because Johnson's claim is just a challenge to Minnesota's shall-issue permitting regime, the Court need not proceed past Step One of *Bruen*. Johnson concedes that Minnesota's shall-issue permitting regime is constitutional. Br. 15. In addition, the Supreme Court's dicta in *Bruen* and this Court's recent interpretation of that language point to the same result.

The Supreme Court said in *Bruen* that shall-issue regimes are presumptively constitutional, expressly identifying Minnesota as a state with one such regime. *See*

597 U.S. at 38 n.9 ("[N]othing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes."); 13 n.1 (citing Minn. Stat. § 624.714); 79-81 (Kavanaugh, J., concurring, with Roberts, C.J.) ("[T]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun."). In making this observation, the Court relied on language from *Heller*, which described how shall-issue regimes preserve access to firearms for law-abiding and responsible individuals. *Id.* at 38 n.9 (citing *Heller*, 554 U.S. at 570); *id.* at 81 (citing *Heller*, 554 U.S. at 626-27 and noting that the right conferred by the Second Amendment "is not unlimited"). Thus, Justice Kavanaugh explained, "the 43 States that employ objective shall-issue licensing regimes for carrying handguns . . . may continue to do so." *Id.* at 80. Only if such regimes are "put toward abusive ends," such as lengthy wait times or exorbitant fees, may the fact of a permit requirement be questioned on constitutional grounds. *Id.* at 38 n.9.

This Court recently endorsed the same language from *Heller* when discussing the lawfulness of a felon-in-possession law. *See Jackson*, 110 F.4th at 1128-29. Referring to *Heller*'s statement that such laws are "presumptively lawful," the Court concluded that this language means such regulations *are* lawful, rather than merely presumptively lawful unless rebutted. *Id.* ("We think it more likely that the Court presumed that the regulations are constitutional *because they are constitutional*, but termed the conclusion presumptive because the specific regulations were not at issue

in *Heller*." (emphasis added)); *accord United States v. Bena*, 664 F.3d 1180, 1183 (8th Cir. 2011) ("It seems most likely that the Supreme Court viewed the regulatory measures listed in *Heller* as presumptively lawful because they do not infringe on the Second Amendment right.").

The Reciprocity Provision is merely a gloss on Minnesota's decision to require permits under its shall-issue regime for anyone who wishes to carry a firearm within the state. Under *Bruen*, *Heller*, and this Court's reading of those cases in *Jackson*, this regime is constitutional. Johnson has neither alleged nor argued that Minnesota's permitting regime has been "put toward abusive ends." Nor can he.[3] State law requires permits to be issued within 30 days and fees are capped at $100. *See* Minn. Stat. § 624.714, subd. 6(a) (processing time); *id.* subd. 3(f) (fee). In fact, Johnson never alleges that he even tried to apply for a permit from Minnesota or any state with reciprocity. He therefore lacks any basis to challenge Minnesota's presumptively constitutional regime. *See Jackson*, 110 F.4th at 1129.

---

[3] Johnson forfeited any opportunity to advance this argument on reply by failing to make it in his principal brief. *See Gatewood*, 70 F.4th at 1080. Even if he had, however, the facial nature of his challenge would require him to show that Minnesota's objective permitting requirements are applied abusively in every instance, not just as to him. *See, e.g.*, *Giambalvo v. Suffolk County.*, 155 F.4th 163, 181 (2d Cir. 2025) (finding plaintiffs were not likely to succeed on merits of challenge to 18-hour training requirement as too costly, when at least some acceptable training courses were not prohibitively expensive).

Several courts confronted with challenges like Johnson's have reached similar results. In *Maryland Shall Issue v. Moore*, for example, the en banc Fourth Circuit concluded that shall-issue permitting regimes are "presumptively constitutional and generally do not 'infringe' the Second Amendment right to keep and bear arms under step one of the *Bruen* framework." 116 F.4th at 222 ("[I]f a plaintiff fails to rebut this presumption of constitutionality," the challenge "fails at step one, with no requirement to conduct a historical analysis under step two." (citation omitted)).

Similarly, in *N.Y. State Firearms Ass'n v. James*, the Second Circuit concluded that the ministerial delays and costs necessary to obtain a shall-issue permit do not meaningfully implicate any burden under the Second Amendment. 157 F.4th 232, 246-47 (2d Cir. 2025) (noting that the short delay associated with obtaining a permit "does not amount to constitutional harm" (citation omitted)); *accord Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 120-21 (10th Cir. 2024) (analyzing presumptively constitutional language from *Bruen* at Step One); *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 118-19 (9th Cir. 2024) (same); *McRorey v. Garland*, 99 F.4th 831, 839 (5th Cir. 2024) (same); *Mills v. New York City*, 758 F. Supp. 3d 250, 265 (S.D.N.Y. 2024) (same); *United States v. Libertad*, 681 F. Supp. 3d 102, 111 (S.D.N.Y. 2023) (same).

A federal district court in Texas reached a similar conclusion in a case with remarkable factual similarities to Johnson's. *See Elite Precision Customs LLC v.*

*Bureau of Alcohol, Tobacco, Firearms, & Explosives*, __ F. Supp. 3d __, 2025 WL 2778498, at *2 (N.D. Tex. Sep. 30, 2025). This case considered a federal regulation that requires weapons manufacturers to sell through licensed dealers in a customer's home state, rather than directly to consumers. Like Johnson, the individual plaintiffs travel regularly and therefore found it cumbersome to purchase weapons in their home state because they are not regularly at home. *Id.* They argued that the regulatory delays and costs associated with the home-state purchase rule violated the Second Amendment. *Id.* The Court disagreed, finding that the incidental side effects of this rule "do not regulate the right to keep and bear arms—only the ability to purchase them in specific and narrow circumstances." *Id.*

So too here. The Reciprocity Provision does not regulate Johnson's right to keep and bear arms—it only addresses the administrative ease with which he can use his Florida and Georgia permits in places other than Florida and Georgia. The Reciprocity Provision does not "disarm" Johnson or "revoke" his Second Amendment rights any more than any permitting regime "disarms" an applicant at the start of the permitting process, or someone who has yet to apply for a permit. *See* Br. 4, 7, 10, 17, 21. Johnson's contrary contention contradicts *Bruen*'s approval of shall-issue licensing regimes. As the Fourth Circuit explained, shall-issue licensing laws "are presumptively constitutional even though such laws require compliance *before* individuals may exercise their Second Amendment rights."

*Maryland Shall Issue*, 116 F.4th at 227 (emphasis original) (relying on *Bruen* and explaining that administrative requirements such as background checks are not an "infringement" even though they "necessarily occasion some delay"). Indeed, under Johnson's logic, Florida and Georgia temporarily "disarmed" him during whatever processing time was required for his permit applications in those states. Yet he appears to have submitted to those processes without any constitutional complaint. Minnesota's process is no different.

Any further *Bruen* analysis should therefore proceed in terms of Minnesota's presumptively constitutional permitting regime, not Johnson's cramped focus on the Reciprocity Provision alone. Johnson has conceded that this permitting regime is constitutional. *See* Br. 15. If more were needed, this Court's reading of *Bruen* confirms the same. *See Jackson*, 110 F.4th at 1128-29. Johnson's challenge fails.

> **3.** **Minnesota's law also prevails at Step Two of *Bruen* because it is consistent with surety laws, which are part of the Nation's historical tradition of firearm regulation.**

At *Bruen*'s second step, courts presume that an individual's conduct is constitutionally protected so the burden shifts to the government. *See Worth*, 108 F.4th 688. To prevail, the government must establish that a challenged regulation is consistent with the Nation's historical tradition of firearm regulation. *Id.* This analysis proceeds at the level of analogues, not "historical twin[s]." *Id.*; *accord Rahimi*, 602 U.S. at 691-92. The thrust of this analysis asks whether the

challenged regulation is similar to historical analogues in terms of "why" and "how." *Rahimi*, 602 U.S. at 692; *see Worth v. Jacobson*, 108 F.4th 677, 692 (8th Cir. 2024) (explaining that "how" asks whether modern and historical regulations impose a comparable burden on the right of armed self-defense, and "why" asks whether that burden is comparably justified).

The Supreme Court's Second Amendment jurisprudence firmly establishes that states are entitled to enact firearm regulations that prevent violence before it occurs. *See, e.g.*, *Rahimi*, 602 U.S. at 693-97. The historical provenance of such laws are surety laws, which in turn stem from the "ancient practice of frankpledges." *Id.* (citing A. Lefroy, Anglo-Saxon Period of English Law, Part II, 26 Yale L. J. 388, 391 (1917)) (describing surety laws as "[w]ell entrenched in the common law"). As the Supreme Court has explained, the frankpledge system compelled adult men to organize themselves into ten-man "tithings," all of whom "mutually pledged for each other's good behavior." *Id.* (quotation modified and internal citation omitted).

Minnesota's modern shall-issue permitting law is no different. Just like the ancient men pledged "good behavior" with their tithing, applicants functionally pledge the same to state regulators when they demonstrate their compliance with Minnesota's objective requirements for a firearm permit.

This application process matches the "why" and "how" of surety laws and those laws' roots in the frankpledge system. As to the why, both regulations seek to

prevent violence before it occurs. *See Rahimi*, 602 U.S. at 695 (describing surety laws as "preventative"); Minn. Stat. § 624.714, subd. 2 (conditioning permits on objective criteria such as "training in the safe use of a pistol"). The right secured by the Second Amendment "is not unlimited," and the Supreme Court has preserved states' ability to enact regulations that promote public safety by keeping firearms away from individuals with a history of dangerous conduct or propensity for the same. *Heller*, 554 U.S. at 626-27, n.26 (noting constitutionality of categorical restrictions that stem from public-safety concerns).

As to the how, both regulations ask people to provide some minimal indicia of their status as law-abiding individuals. At common law, people accomplished this through membership in frankpledge tithings and surety proceedings before a magistrate. *See Rahimi*, 602 U.S. at 693-97. Today in Minnesota, people accomplish this same sort of pledge by submitting a straightforward application about objective criteria to state regulators. If regulators determine those criteria are not met, that determination provides "credible, individualized evidence that [an applicant] would pose a danger if armed," which entitles Minnesota to disarm an applicant by denying a permit. *Marquis*, 252 N.E.3d at 1010; *see* Minn. Stat. § 624.714, subd. 6(a)(2), (3). Otherwise, the applicant is presumed to be law-abiding and entitled to wield a firearm in public, which is why Minnesota "must" issue a permit to anyone who applies. Minn. Stat. § 624.714, subd. 6(a)(1).

Frankpledges are an apt comparison. These were the historical predecessors of surety laws. *See Rahimi*, 602 U.S. at 695. As described in *Rahimi*, this system "compell[ed]" men to make pledges of good behavior, seemingly before any proof of misconduct or bad behavior. *Id.* These preemptive pledges are a tight fit with the administrative preconditions that modern permit applications impose.

Thus, on both axes of this historical inquiry, Minnesota's permitting regime is sufficiently analogous to common-law regulations. Under *Rahimi*'s rule that matching principles are enough, 602 U.S. at 692, Minnesota's permitting regime passes Step Two of *Bruen* with flying colors.

Johnson's arguments to the contrary are unpersuasive. As a threshold matter, he frames his argument only in terms of the Reciprocity Provision, not Minnesota's shall-issue permitting regime. *See* Br. 23-27. But because the Reciprocity Provision is merely a gloss on the underlying permitting requirement, *see* § II.B.2.a, *supra*, Johnson should have addressed his historical analysis to the latter. He did not and has forfeited the opportunity to do so on reply. *See Gatewood*, 70 F.4th at 1080.

In any event, his historical analysis of the Reciprocity Provision fails. First, Johnson misapprehends the district court's decision. The district court did not divorce the Reciprocity Provision from Minnesota's underlying permitting regime and hold that the Reciprocity Provision was, alone, "like surety laws." Br. 23 (citing App. Add. 16; J.App. 98; R. Doc. 39, at 15). The district court framed its holding in

terms of "the permitting regime and the reciprocity provision," finding that both satisfied the "why" and "how" of the historical inquiry. App. Add. 16-17; J.App. 98-99; R. Doc. 39, at 15-16.

Indeed, the district court's most specific historical analysis zoomed in on the permitting regime to the exclusion of the Reciprocity Provision, highlighting the former's primacy. The district court wrote, "[t]he question is whether the burden imposed by preconditions to carry in public is consistent with historical regulations. Minnesota's permitting regime, much like the surety laws, is preventative and targets public safety; it also applies objective standards rather than arbitrary discretion." App. Add. 17; J.App. 99; R. Doc. 39, at 16. The district court then distinguished the Reciprocity Provision, rejecting Johnson's argument that this particular provision required independent historical support. "[T]his provision does not independently burden Second Amendment rights. Instead, it merely establishes the scope of recognition of out-of-state permits." App. Add. 17; J.App. 99; R. Doc. 39, at 16; *accord* § II.B.2.a, *supra*.

Johnson is also incorrect that Minnesota law "effectively presumes that no out-of-state firearm license holder" has a right to carry in public. Br. 26 (citation brackets modified). Minnesota law presumes the opposite, which is why county sheriffs "must" issue a permit to anyone who applies, unless an application shows a

constitutional ground for denial such as past felonious conduct or mental illness. Minn. Stat. § 624.714, subd. 6(a).

All told, this Step Two analysis demonstrates that Minnesota's permitting regime (and by extension, the Reciprocity Provision), fits well with the Second Amendment.

## III.    JOHNSON'S NEW "VAGUENESS" CLAIMS ARE NOT PROPERLY BEFORE THE COURT; THEY ALSO ARE MERITLESS.

For the first time on appeal, Johnson asserts "vagueness" and "overbreadth" claims. *See* Br. 29-36. These claims are not properly before the court, and they are meritless.

This Court does not consider an argument or claim raised for the first time on appeal. *See Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 900 (8th Cir. 2020) (citing *Eagle Tech. v. Expander Arms., Inc.*, 783 F.3d 1131, 1138 (8th Cir. 2015)); *but see Fleck v. Wetch*, 937 F.3d 1112, 1116 (8th Cir. 2019) (noting two exceptions to this rule).

Johnson argues in his brief that the Reciprocity Provision is "unconstitutionally vague" and "overbroad." Br. 29. He grounds these claims in the Fourteenth and First Amendments, citing cases that set forth standards that govern void-for-vagueness claims and overbreadth challenges. *Id.* 30 (citing *F.C.C. v. Fox*

*Television Stations, Inc.*, 567 U.S. 239 (2012); *Duhe v. City of Little Rock*, 902 F.3d 858 (8th Cir. 2018); *Minn. Voters All. v. Mansky*, 585 U.S. 1 (2018)).

This argument is inappropriate because Johnson never alleged a void-for-vagueness claim or an overbreadth claim below. His complaint consists of one count, which alleges a violation "of the Second Amendment." J.App. 20 (Claim I); R. Doc. 1, at 20; *see also* J.App. 23 (prayer for relief seeking a judgment that declares "Minnesota's laws, practices, policies, and customs of refusing to recognize the lawfully issued out-of-state firearm permits violates the Second Amendment"); R. Doc. 1, at 23.

Not only did Johnson fail to plead a claim under the First or Fourteenth amendments in his complaint, he also failed to mention anything about substantive due process or First Amendment overbreadth during the briefing and argument on the motion to dismiss. Indeed, in his responsive briefing, he expressly limited the scope of his single claim when discussing disputed issues, such as standing. *See, e.g.*, J.App. 50 ("In the context of a second amendment claim . . ."); R. Doc. 19, at 7; *accord* J.App. 104-35; R. Doc. 45. And in the merits section of his responsive argument, Johnson's arguments about why the Reciprocity Provision is unconstitutional were limited to the Second Amendment. *See* J.App. 55-64; R. Doc. 19, at 12-21.

The district court also appeared to understand that Johnson had alleged one and only one claim—a Second Amendment challenge. Its order describes Johnson's challenge as alleging a violation of the Second Amendment. *See* App. Add. 2, 6; J.App. 84, 88; R. Doc. 39, at 1, 5. The district court did not conduct any void-for-vagueness or First Amendment overbreadth analysis. *See generally* App. Add. 2-19; J.App. 84-101; R. Doc. 39.

Johnson's current attempt to advance two new challenges despite this procedural history contravenes this Court's "well settled" law on argument preservation. *Mitchell*, 959 F.3d at 900; *Eagle Tech.*, 783 F.3d at 1138. Johnson could have attempted to justify his deviation from this law by invoking *Fleck*'s exceptions to the rule against raising new issues on appeal, but he did not. *See generally* Br. 29-36. By failing to raise the issue of these exceptions in his principal brief, he has forfeited any opportunity to do so on reply. *See Gatewood*, 70 F.4th at 1080. The Court should therefore decline to consider these improper arguments and strike the same from the record.[4]

---

[4] If the Court intends to consider these arguments and/or declines to strike the same, the Commissioner respectfully requests the opportunity to submit a sur-reply brief.

# CONCLUSION

For the above reasons, the Commissioner respectfully requests that the Court affirm the district court. The Reciprocity Provision and Minnesota's firearm permitting regime are constitutional and withstand Johnson's facial challenge.

Dated: <u>January 12, 2026</u>          Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

<u>s/ Madeleine DeMeules</u>
MADELEINE DEMEULES (#0402648)
AMANDA PRUTZMAN (#0389267)
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, MN  55101-2131
(651) 300-7923 (Prutzman)
(651) 300-6807 (DeMeules)
amanda.prutzman@ag.state.mn.us
madeleine.demeules@ag.state.mn.us

*Attorneys for Appellant Bob Jacobson,*
*Commissioner of the Minnesota*
*Department of Public Safety*

**CERTIFICATE OF COMPLIANCE**
**WITH FRAP 32**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,722 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 pt Times New Roman font.


s/ Madeleine DeMeules
MADELEINE DEMEULES
Assistant Attorney General

**CERTIFICATE OF COMPLIANCE
WITH 8th Cir. R. 28A(h)(2)**

The undersigned, on behalf of the party filing and serving this brief and addendum, certifies that the brief and addendum have been scanned for viruses and that they are virus-free.


s/Pam Hewitt
Pam Hewitt

|#6263647-v2