No. 25-3036

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

DAVID A. McCOY, II,
*Plaintiff*,

JEFFREY M. JOHNSON, Sr.
*Plaintiff - Appellant*

v.

BOB JACOBSON,
IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE
MINNESOTA DEPARTMENT OF PUBLIC SAFETY,
*Defendant – Appellee*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
No. 25-CV-054

APPELLANT'S REPLY

Ryan Morrison
Timothy Kilcullen
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
rmorrison@ljc.org
tkilcullen@ljc.org
*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

ARGUMENT ........................................................................................... 6

I.  The analysis and outcome of this matter is the same whether Johnson's case is deemed a facial or an as-applied challenge ....... 7

II.  The Reciprocity Statute burdens Johson's Second Amendment rights ........................................................................... 11

III.  Minnesota's Reciprocity Statute and licensing laws are distinct ........................................................................... 14

IV.  Minnesota failed to meet its *Bruen* burden .................................. 23

    A.  The frankpledge system does not support the Reciprocity Statute ......................................................................... 23

    B.  Historic surety laws do not support the Reciprocity Statute . 25

    C.  Minnesota's public interest does not support the Reciprocity Statute ......................................................................... 25

V.  The Reciprocity Statute is unconstitutionally vague ..................... 28

CONCLUSION ....................................................................................... 34

CERTIFICATE OF COMPLIANCE ................................................................ 35

CERTIFICATE OF SERVICE ...................................................................... 36

# TABLE OF AUTHORITIES

CASES

*Bills v. Dahm,*
    32 F.3d 333 (8th Cir. 1994) ........................................................... 25

*Citizens Utd. v. Fed. Election Comm'n,*
    558 U.S. 310 (2010) ...................................................................... 10

*Cook v. George's, Inc.,*
    952 F.3d 935 (8th Cir. 2020) ........................................................ 29

*Doe v. Reed,*
    561 U.S. 186 (2010) ...................................................................... 10

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ...................................................................... 27

*Duhe v. City of Little Rock,*
    902 F.3d 858 (8th Cir. 2018) ........................................................ 31

*Fleck v. Wetch,*
    937 F.3d 1112 (8th Cir. 2019) ................................................ 28, 33

*Frost v. Sioux City,*
    920 F.3d 1158 (8th Cir. 2019) ........................................................ 9

*John Styczinski v. Arnold,*
    141 F.4th 950 (8th Cir. 2025) ...................................................... 12

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ...................................................................... 31

*Markham v. Wertin,*
    861 F.3d 748 (8th Cir. 2017) ........................................................ 13

*Minnesota Voters All. v. Mansky,*
    585 U.S. 1 (2018) ............................................................ 28, 29, 32

*New York State Rifle & Pistol Ass'n v. Bruen,*
    597 U.S. 1 (2022) .................................................................. *passim*

*United States v. Rahimi,*
    602 U.S. 680 (2024) .............................................................23-25

*Worth v. Jacobson,*
    108 F.4th 677 (8th Cir. 2024).............................................. *passim*

CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. II ................................................................ *passim*

MINNESOTA STATUTES

Minn. Stat. § 299C.091.................................................................. 27, 28

Minn. Stat. § 624.714, Subd. 2..................................................... 8, 16, 17

Minn. Stat. § 624.714, Subd. 2a................................................... 8, 16, 17

Minn. Stat. § 624.714, Subd. 3..................................................... 8, 16, 17

Minn. Stat. § 624.714, Subd. 4..................................................... 8, 16, 17

Minn. Stat. § 624.714, Subd. 6..................................................... 8, 16, 17

Minn. Stat. § 624.714, Subd. 16................................................... *passim*

Minn. Stat. § 645.20 ........................................................................... 12

OTHER STATE STATUTES

Ala. Code § 13A-11-75 .................................................................. 26, 27

Ariz. Rev. Stat. Ann. § 13-3112..................................................... 26, 27

Fla. Stat. § 790.06 .......................................................................... 26, 27

Ga. Code Ann. § 16-11-129 ................................................ 26, 27

Ind. Code § 35-47-2-3 ...................................................... 26, 27

Iowa Code § 724 ............................................................. 26, 27

Ky. Rev. Stat. § 237.109 ........................................................ 21

Me. Rev. Stat. Ann., Tit. 25, § 2003 ................................. 26, 27

N. H. Rev. Stat. Ann. § 159 .............................................. 26, 27

Ore. Rev. Stat. §166.291 ................................................... 26, 27

18 Pa. Cons. Stat. §6109 ................................................... 26, 27

Tex. Gov't Code § 411.172 ....................................... 19, 20, 27

Utah Code § 53-5a-303 .................................................... 26, 27

Va. Code Ann. § 18.2-308 ................................................ 26, 27

Wash. Rev. Code §9.41.070 ............................................. 26, 27

Wis. Stat. §175.60 ........................................................... 26, 27

Wyo. Stat. Ann. §6-8-104 ................................................ 26, 27

OTHER AUTHORITIES

*CCDW Reciprocity*, KENTUCKY STATE POLICE,
https://wp.kentuckystatepolice.ky.gov/ccdw/ccdw-home/ccdw-reciprocity
(last visited Dec. 3, 2025) [https://tinyurl.com/yrex7nyv] ...................... 21

*State Reciprocity Information*, TEXAS DEPT. OF PUBLIC SAFETY,
https://www.dps.texas.gov/section/handgun-licensing/state-reciprocity-
information (last visited Dec. 3, 2025) [https://tinyurl.com/mr98bd38] 22

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court granted Minnesota's motion to dismiss because it believed that Minnesota met its burden under *Bruen* Step Two, which requires it to show that its firearm license reciprocity statute (Minn. Stat. Ann. § 624.714 Subd. 16) is consistent with the Nation's historic tradition of firearm regulation. *See* J. App. 97-100; R. Doc. 39, at 14-17; *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022) (explaining both steps of Second Amendment analysis). As Johnson explained in his opening brief, the district court erred because Minnesota never attempted to, and the district court did not require it to prove its firearm reciprocity statute was consistent with the Nation's historic firearm laws. Appellant Br. 9-23. Furthermore, the district court erred by holding that the Reciprocity Statue is the equivalent of historic surety laws. Appellant Br. 23-29. In other words, the district court failed to correctly apply *Bruen* Step Two.

And while Johnson spent most of his opening brief explaining how and why the district court erred, Minnesota's brief dedicates almost four times more space addressing issues that it (incorrectly) contends the district court got wrong in granting its motion to dismiss than it does

addressing Johnson's arguments—effectively failing to offer any meaningful defense of the district court's opinion. Indeed, Minnesota is fixated on irrelevant issues, and it compulsively presents red herrings and tangential matters.

First, Minnesota is preoccupied with whether Johnson brought a facial or an as-applied challenge to its firearm license reciprocity statute. It believes Johnson brought only a facial challenge and this fact alone decisively tilts the case in its favor. In fact, Johnson brought both challenges. And even though the district court held that Johnson brought only a facial challenge, it nonetheless addressed the merits of this case because it knew that issue was not decisive. J. App. 91, 93-100; R. Doc. 39, at 8, 10-17. That's because regardless of whether this case was pled as a facial or an as-applied challenge, the desired relief is the same. The Reciprocity Statute only violates the Second Amendment rights of individuals that possess unrecognized out-of-state firearm licenses. There is no difference between the constitutional injury that Johnson suffers in Minnesota and any other person with an unrecognized out-of-state firearm license. So, whether this constitutional challenge is facial, as applied, or both, the *Bruen* analysis

is the same and a favorable outcome affects Johnson and all other people with an unrecognized out-of-state firearm license equally.

Like the district court, the government claims the Reciprocity Statute is inseparable from the firearm licensing system. But unlike the district court, the government attempts to transform Johnson's claim against only the Reciprocity Statute into a challenge against Minnesota's entire firearm licensing scheme to help its facial challenge argument. However, the laws are different.

First, the laws do different things. The licensing system issues Minnesota firearm licenses. The Reciprocity Statute determines which out-of-state firearm licenses are recognized in Minnesota. And, more importantly, the laws achieve their ends with separate methods—a constitutional method for the licensing system but an unconstitutional method for the Reciprocity Statute.

Indeed, the licensing system is based on narrow, objective, and definite standards and the Reciprocity Statute is not. Individuals that meet the objective licensing standards will receive a Minnesota firearm license. But Minnesota will only recognize an out-of-state firearm license if the issuing state's firearm license laws are "similar" to

Minnesota's laws. What makes another state's laws similar? Minnesota does not know, which allows the statute to be arbitrarily administered. That fact alone proves the laws are different. And it is this element of the Reciprocity Statute that makes it unconstitutional.

Also, contrary to the district court's holding, *see* J. App. 97; R. Doc. 39, at 14, Minnesota believes Johson cannot challenge the Reciprocity Statute under the Second Amendment and that his claims are better suited under various other causes of action. But the Reciprocity Statute allows some out-of-state license holders to exercise their Second Amendment rights in Minnesota, while it denies Johnson his constitutional right to carry a firearm for self-defense. Accordingly, the Second Amendment covers his conduct, and he meets the requirements of *Bruen* Step One. *See* J. App. 97; R. Doc. 39, at 14; *Bruen*, 597 U.S. at 24 (explaining both steps of Second Amendment analysis).

Minnesota also offers an unserious historic regulation analog for *Bruen* analysis, i.e., frankpledges, to justify its firearm laws. But those laws are not only un-American, they are from the Middle Ages, and were never used to regulate firearms.

Furthermore, Minnesota made no effort to rebut Johnson's *Bruen* Step Two argument against the district court's decision in his principal brief.

Finally, Minnesota asserts that Johnson is raising a new constitutional vagueness argument on appeal and that this Court should not entertain it. But this is not a new argument. Johnson argued the Reciprocity Statute has an arbitrary standard in his complaint and at the hearing on the government's motion to dismiss. Also, the district court ruled on this issue.

Regardless, it was not until the scrutiny of the district court's questioning at the motion hearing that the government revealed the true arbitrary and capricious nature of the Reciprocity Statute and that the constitutional vagueness issue became evident. And before Johson could obtain discovery on Minnesota's arbitrary operation of the statute and thoroughly litigate the issue at the district court, the case was dismissed. Under these circumstances, the conditions are met for this Court to exercise its discretion to consider the constitutional vagueness issue on appeal. But even if this Court declines to exercise its discretion,

it should reverse the district court's decision for the reasons stated below and in Johson's principal brief.

## ARGUMENT

Minnesota did not refute any of Johnson's arguments. In fact, the government did not meaningfully engage with any of Johnson's disputes with the district court's decision or make a good faith attempt to defend the decision below. Instead, the government used most of its brief to point out its disagreements with the district court.

As Johnson shows below, Minnesota's brief argued against a case that Johnson did not bring, presents a convoluted discussion of red herring issues, and fails to persuasively defend the district court's ruling. Most prominent of all, the government attempts to completely reframe Johnson's claim against Minnesota's firearm license reciprocity statute as a challenge to the state's entire firearm licensing system. It is beyond dispute that Johnson challenged only one Minnesota firearm law—the Reciprocity Statute (Minn. Stat. Ann. § 624.714 Subd. 16). *See* J. App. 23; R. Doc. 1, at ¶ 88. The government's attempt to recast Johnson's lawsuit is as misleading as it is unserious.

At issue in this appeal is Johnson's good faith dispute with the district court's *Bruen* analysis, particularly Step Two, which Johnson addressed in his principal brief. The government's brief adds little to this discussion. It should be ignored.

For the reasons set forth in his opening brief and below, this Court should reverse the district court's order that dismissed Johnson's case.

I.     **The analysis and outcome of this matter is the same whether Johnson's case is deemed a facial or an as-applied challenge.**

Johnson's only claim in this case is that Minnesota's firearm reciprocity law, "Minn. Stat. Ann. § 624.714 Subd. 16[,] violates the Second Amendment" "both facially and as applied to" him. J. App. 23; R. Doc. 1, at ¶¶ 87-88.

But the government claims Johnson only brought a facial challenge and it is adamant that this dispositively proves that it should prevail. *See* Appellee Br. at 7-10. According to Minnesota, because its firearm license reciprocity statute does not violate the Second Amendment rights of Minnesota firearm license holders, individuals with recognized out-of-state firearm licenses, dangerous individuals, felons, and drug addicts, Johnson cannot prevail on a facial challenge. *Id.* at 9-10.

Johnson's facial challenge is not against Minnesota's firearm licensing system, i.e. how or whether individuals can obtain a Minnesota firearm license. *See* Minn. Stat. Ann. §§ 624.714 Subds. 2, 2a, 3, 4, 6. Rather, Johnson's facial challenge, just like his as-applied challenge, is against Minn. Stat. Ann. § 624.714 Subd. 16—the out-of-state firearm license reciprocity statute—because it violates the Second Amendment rights of unrecognized out-of-state firearm license holders. *See* J. App. 23; R. Doc. 1, at ¶ 88.

And although the district court found that Johnson brought only a facial challenge, *see* J. App. 91; R. Doc. 39, at 8, it recognized that whether Johnson brought a facial challenge, an as-applied challenge, or both, the *Bruen* analysis is the same and any individual relief Johnson obtained would also "appl[y] to all individuals with out-of-state permits that are not granted reciprocity in Minnesota." J. App. 91; R. Doc. 39, at 8.

Minnesota's firearm reciprocity statute, more specifically Minn. Stat. Ann. § 624.714 Subd. 16(a), allows a person with an out-of-state firearm license from a state that Minnesota deems "similar" to its own to have the same rights, privileges, and requirements as someone with a

Minnesota firearm license. But a person holding an out-of-state firearm license from a state that Minnesota does not recognize under Minn. Stat. Ann. § 624.714 Subd. 16(a) cannot lawfully carry a firearm in Minnesota unless they first obtain a Minnesota firearm license.

Accordingly, Minn. Stat. Ann. § 624.714 Subd. 16(a) does not affect the Second Amendment rights of Minnesota firearm license holders, individuals with recognized out-of-state firearm licenses, dangerous individuals, felons, or drug addicts.

But the statute does affect the Second Amendment rights of individuals, like Johnson, that possess an unrecognized out-of-state firearm license—that is the only application the Reciprocity Statute has. And these are the only individuals that suffer a legal injury under Minn. Stat. Ann. § 624.714 Subd. 16(a). Thus, a facial Second Amendment challenge to Minn. Stat. Ann. § 624.714 Subd. 16(a) only applies to individuals that possess an unrecognized out-of-state firearm license.

Individuals like Johnson are the only type of person that has standing to bring a Second Amendment challenge to Minn. Stat. Ann. § 624.714 Subd. 16(a). *See Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th

Cir. 2019) (explaining the requirements for Article III standing). And they are the only type of plaintiff relevant for a Second Amendment facial challenge to Minnesota's reciprocity statute.

Also, because of the *Bruen* analysis in this case, the facial versus as-applied dichotomy is a distinction without a difference. In Minnesota, every unrecognized out-of-state firearm license holder stands in Johnson's shoes, and vice versa under *Bruen* Step One because all of them want to carry a firearm in public for self-defense. *See Bruen*, 597 U.S. at 24. Accordingly, whether it is Johnson or some other unrecognized out-of-state firearm license holder, Minnesota must satisfy *Bruen* Step Two "by demonstrating that [Minn. Stat. Ann. § 624.714 Subd. 16] is consistent with the Nation's historical tradition of firearm regulation." *Id*.

"[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens Utd. v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). After all, a claim can have the "characteristics of both." *Doe v. Reed*, 561 U.S. 186, 194 (2010).

Whether Johnson's case is facial, as applied, or both "is not what matters. The important point is that [Johnson's] claim and the relief that would follow" is the same for him as it would be for any other holder of an out-of-state firearm license Minnesota refuses to recognize under Minn. Stat. Ann. § 624.714 Subd. 16. *Doe*, 561 U.S. at 194. Their out-of-state firearm license would authorize them to carry a firearm in public for self-defense in Minnesota. Indeed, the Second Amendment injury Johnson suffers and the relief he needs is the same as any other holder of an out-of-state firearm license Minnesota refuses to recognize.

The district court was correct to quickly deal with this issue and move on to the *Bruen* analysis. This Court should do the same.

## II. The Reciprocity Statute burdens Johson's Second Amendment rights.

The only claim in Johnson's complaint is that "Minn. Stat. Ann. § 624.714 Subd. 16 violates the Second Amendment." J. App. 23; R. Doc. 1, at ¶ 88. He is not challenging Minnesota's licensing scheme. Just the state's reciprocity statute. *See id*. And because Minnesota law "presumes a statute is severable," the rest of the state's firearm licensing system is unaffected by a judgment in his favor. *John*

*Styczinski v. Arnold*, 141 F.4th 950, 954 (8th Cir. 2025) (citing Minn. Stat. § 645.20).

Even so, the government argues Johnson's Second Amendment challenge against a law that forces him to disarm is not an actual Second Amendment claim. *See* Appellee Br. at 11-15. Not so.

"'[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.'" *Worth v. Jacobson*, 108 F.4th 677, 685 (8th Cir. 2024) (quoting *Bruen*, 597 U.S. at 10). "[T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

Under Minn. Stat. Ann. § 624.714 Subd. 16, only recognized out-of-state firearm licenses holders are allowed to exercise their Second Amendment rights in Minnesota, and unrecognized out-of-state firearm license holders must disarm at the state line or face criminal penalties. Johnson has two unrecognized out-of-state firearm licenses. But for

Minnesota's refusal to include the states that issued his firearm licenses on its reciprocity list, Johnson could carry a handgun for self-defense in Minnesota.

The Second Amendment protects Johnson's "'right to carry a handgun for self-defense outside the home,'" *Worth*, 108 F.4th at 685 (quoting *Bruen*, 597 U.S. at 10). Thus, Minn. Stat. Ann. § 624.714 Subd. 16 burdens Johnson's Second Amendment rights by preventing him from carrying a firearm for self-defense in public even though he has two firearm licenses. As the district court held, "Johnson's proposed conduct—i.e., publicly carrying a firearm in Minnesota for self-defense—falls squarely within the scope of activity that the Second Amendment protects at [*Bruen*] Step One." J. App. 97; R. Doc. 39, at 14 (citing *Bruen*, 597 U.S. at 31-32). Accordingly, Minnesota "must [now] justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation" under *Bruen* Step Two. 597 U.S. at 24.

Johson may or may not have other claims against Minn. Stat. Ann. § 624.714 Subd. 16 as the government suggests. As "the master of the complaint," *Markham v. Wertin*, 861 F.3d 748, 760 (8th Cir. 2017)

(internal quotation marks omitted), he gets to decide what claims to bring. The government will have to contend with the Second Amendment case at hand instead of a hypothetical matter.

### III. Minnesota's Reciprocity Statute and licensing laws are distinct.

Minnesota frames Johnson's case as a challenge against Minnesota's entire "shall-issue" firearm license system, which, according to the government, *ipso facto* means Minnesota wins. *See* Appellee Br. at 15-23. Indeed, without explanation, Minnesota argues its firearm licensing system and the Reciprocity Statute are inseparable. It merely asserts "[t]here is no daylight" between the laws and that "the Reciprocity Provision simply effectuates [the] shall-issue [license] regime's safety-based requirement that anyone who wishes to carry a firearm in public first obtain a permit." Appellee Br. at 15-16. Minnesota goes on to argue that its law is presumptively constitutional because the license system is a "shall issue" scheme, and that it should be upheld at *Bruen* Step One. *See* Appellee Br. at 16-23. But Minnesota is wrong.

Because "Johnson's proposed conduct—i.e., publicly carrying a firearm in Minnesota for self-defense—falls squarely within the scope of activity that the Second Amendment protects at Step One," the district

court correctly held that whether Johnson's claim is successful will be determined at *Bruen* Step Two. J. App. 97; R. Doc. 39, at 14.

But like Minnesota, the district court mistakenly conflated the state's firearm license system with the Reciprocity Statute, which led to its erroneous ruling. *See* J. App. 97-100; R. Doc. 39, at 14-17. However, Minnesota's firearm licensing system and its Reciprocity Statute as distinct laws that both provide a way for individuals to legally carry a firearm in public: by going through the process to obtain a Minnesota license or by holding a valid out-of-state firearm license recognized by the State. The district court was wrong to equate the two. *See* Appellant Br. at 15-23.

Further, *Bruen*, 597 U.S. at 38 n.9, relied on by the district court, supports a finding that the Reciprocity Statute is distinct from Minnesota's firearm licensure system.

The district court held "Minnesota's firearm permitting regime and reciprocity provision satisfy" *Bruen* Step Two. J. App. 98; R. Doc. 39, at 15. It reasoned "Minnesota's permitting regime is designed to prevent violence before it occurs by screening individuals for responsibility and lawfulness." *Id*. And that Minnesota achieves these goals in its

"licensing process, which includes an in-person application, background check, and processing time." *Id*. *See also* Minn. Stat. Ann. §§ 624.714 Subds. 2, 2a, 3, 4, 6. Consequently, like the government, the district court was "persuaded" that "'shall-issue' regimes designed to ensure that 'those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens' are presumptively constitutional." J. App. 98-99; R. Doc. 39, at 15-16 (citing *Bruen*, 597 U.S. at 38 n.9). The district court concluded that "Minnesota's reciprocity provision is an extension of these [license law] preventative measures," because it "condition[s] out-of-state permits on whether permitting standards are substantially similar to Minnesota's" license laws. J. App. 98; R. Doc. 39, at 15. However, *Bruen*, 597 U.S. at 38 n.9, shows why the Reciprocity Statute is unconstitutional.

The "shall-issue" firearm license schemes that the Supreme Court endorsed had "only narrow, objective, and definite standards guiding licensing officials, rather than requiring the appraisal of facts, the exercise of judgment, and the formation of an opinion—features that typify proper-cause standards like New York's [unconstitutional firearm law]." *Id*. (internal quotation marks and citation omitted). While

Minnesota's firearm license system typifies these characteristics, *see* Minn. Stat. Ann. §§ 624.714 Subds. 2, 2a, 3, 4, 6, its Reciprocity Statute does not. Instead, Minnesota is directed to recognize out-of-state firearm licenses issued by states with "similar" license laws, Minn. Stat. Ann. § 624.714 Subd. 16(a), without any "narrow, objective, [or] definite standards [to] guid[e] [Minnesota] officials." *Bruen*, 597 U.S. at 38 n.9 (internal quotation marks and citation omitted). Accordingly, Minnesota's Reciprocity Statute "require[es] the appraisal of facts, the exercise of judgment, and the formation of an opinion—features that typify proper-cause standards like New York's [unconstitutional firearm law]." *Id.* The Reciprocity Statute is nothing like Minnesota's firearm license law.

Indeed, Minnesota's reciprocity statute is unconstitutional for the same reasons that the *Bruen* Court struck down New York's "proper cause" firearm license system. 597 U.S. at 16-17, 79-80. "No New York statute defined 'proper cause.'" *Id.* at 12. Thus, New York "authorities" managing that state's "may issue" firearm license system had "discretion" whether to issue a firearm license or not. *Id.* at 14.

Likewise, Minnesota officials do not have a definition of "similar" to guide their administration of the Reciprocity Statute. The district court asked the government what does Minnesota do "to examine other laws to determine whether they're similar or not[?] Is there a process? Is there regulation that focus[es] on that?" J. App. 131; R. Doc. 45, at 28:20-23. The government had no answers. To explain how a state is added to the reciprocity list, it just recited the statute. *See* J. App. 131-32; R. Doc. 45, at 28:24—29:14. And the government did not "know one way or another" how Minnesota removes a state from its list. J. App. 132; R. Doc. 45, at 29:15-18.

Without "narrow, objective, and definite standards guiding [Minnesota] licensing officials," they must exercise their discretion for whether to add states to its firearm reciprocity list or not. *Bruen*, 597 U.S. at 38 n.9 (internal quotation marks omitted). This process "require[es] the appraisal of facts, the exercise of judgment, and the formation of an opinion—features that typify proper-cause standards like New York's." *Id.* (internal quotation marks and citation omitted).

Furthermore, Texas's status on Minnesota's reciprocity list is illustrative of the lack of "narrow, objective, and definite standards

guiding [the Minnesota] licensing officials" administrating the Reciprocity Statute. *Bruen*, 597 U.S. at 38 n.9 (internal quotation marks omitted).

At the outset of this case, Texas was not on Minnesota's reciprocity list and a plaintiff with a Texas firearm license was a party to this litigation. J. App. 9-10; R. Doc. 1, at ¶¶ 25-33. Subsequently, Minnesota added Texas to its reciprocity list without *any* change to Texas's firearm license laws. The government explained that "Texas is now on the list following the Supreme Court's denial of cert. in *Worth.*" *See* J. App. 107; R. Doc. 45, at 4:23-25.

In *Worth*, this Court struck down the Minnesota firearm license requirement that all applicants be at least 21 years old and, subsequently, allowed 18-year-old citizens obtain a license. 108 F.4th at 698. Minnesota's answer to the district court's question about Texas's reciprocity list status, thus, gave the impression that Texas allowed 18-year-old individuals to obtain firearm licenses, the *Worth* decision made the two states' laws "similar," and that allowed Texas to join the list. But Texas requires firearm license applicants to be 21 years old too. *See* Tex. Gov't Code § 411.172(a)(2). And unlike Minnesota, Texas does not

require any firearm education or training course. *See* Tex. Gov't Code § 411.172. In fact, Texas is a "constitutional carry" state, which "allow[s] certain individuals to carry handguns in public in the state without any permit whatsoever." *Bruen*, 597 U.S. at 13 n.1. Yet, Minnesota concluded that Texas has "similar" firearm license laws and added it to the reciprocity list.

Clearly, the *Worth* decision had nothing to do with Minnesota adding Texas to its reciprocity list. And with no changes to Texas's firearm license laws, it was added to Minnesota's firearm reciprocity list without a "similar" firearm training requirement or, as a "constitutional carry" state, any requirement for a firearm license at all.

Texas's firearm license laws are not "similar" to Minnesota's firearm license regulations. Its presence on Minnesota's reciprocity list illustrates that there are no "narrow, objective, [or] definite standards," *Bruen*, 597 U.S. at 38 n.9 (internal quotation marks omitted), for determining whether another state's firearm license laws are "similar" under Minn. Stat. § 624.714, Subd. 16(a).

The government's recommendation that Johnson acquire a firearm license online from Kentucky to solve his Minnesota reciprocity

problem, *see* J. App. 114; R. Doc. 45, at 11:4-15, is as unreasonable as it is arbitrary for several reasons. First, Kentucky not only has license reciprocity with Minnesota but also with Florida and Georgia, which is where Johnson is already licensed.[1] It is unreasonable to require Johnson to obtain a license from a state that already has reciprocity with the licenses he already holds. It is also undeniably arbitrary that while Minnesota and Kentucky have similar license laws, Kentucky, a state with the same public safety interests as Minnesota, extends reciprocity to Florida and Georgia but Minnesota does not.

Next, like Texas, Kentucky is a "constitutional carry" state. *See Bruen*, 597 U.S. at 13 n.1; Ky. Rev. Stat. § 237.109. Therefore, it is also unreasonable to require Johnson to obtain a license from a state that does not require a license to carry a firearm.

Furthermore, that constitutional carry states, e.g., Kentucky and Texas, have firearm license laws that are "similar" to Minnesota's license laws is proof that Minnesota's reciprocity statute has arbitrary standards. Indeed, Johnson can carry his firearm in Kentucky or Texas

---

[1] *See CCDW Reciprocity*, Kentucky State Police, https://wp.kentuckystatepolice.ky.gov/ccdw/ccdw-home/ccdw-reciprocity (last visited Feb. 3, 2026) [https://tinyurl.com/yrex7nyv].

with or without his current licenses but not in Minnesota, which has reciprocity with Kentucky and Texas. Likewise, that states, e.g., Kentucky and Texas,[2] have firearm licenses laws that are "similar" to Minnesota's license laws but also have license reciprocity with states that Minnesota does not recognize, e.g., Florida and Georgia, is proof that Minnesota's reciprocity statute has no "narrow, objective, [or] definite standards." *Bruen*, 597 U.S. at 38 n.9 (internal quotation marks omitted).

At bottom, Minnesota's firearm license and reciprocity laws are distinct and guided by separate standards. The government's interest in the license law meets the constitutional standard, *id.*, but the government's interest in the reciprocity law—to the degree that any can be identified—does not. *Id.* Minnesota cannot bootstrap its unconstitutional Reciprocity Statute onto its valid license scheme. The Reciprocity Statute must stand or fall on its own.

---

[2] *See State Reciprocity Information*, Texas Dept. of Public Safety, https://www.dps.texas.gov/section/handgun-licensing/state-reciprocity-information (last visited Feb. 3, 2026) [https://tinyurl.com/mr98bd38].

**IV. Minnesota failed to meet its *Bruen* burden.**

At *Bruen* Step Two, "[t]he government must [ ] justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24. Here, Minnesota chose to analogize its reciprocity statute to "the 'ancient practice of frankpledges.'" Appellee Br. at 24-26 (quoting *United States v. Rahimi*, 602 U.S. 680, 695 (2024)). It also cites the district court's analogy to surety laws. *Id.* at 26-27. And, like the district court, J. App. 98-99; R. Doc. 39, at 15-16, it makes an overarching argument that its regulation "prevents violence" and promotes "public safety." Appellee Br. at 24-27. But Minnesota's arguments miss the mark.

**A. The frankpledge system does not support the Reciprocity Statute.**

The *Rahimi* Court explained that the frankpledge system was used during the High Middle Ages and began under the reign of England's King Canute (1016-1035). *See Rahimi*, 602 U.S. at 695. Hardly, the equivalent of a criminal background check as the government suggests, *see* Appellee Br. at 26 (frankpledges are "a tight fit" with modern firearm license applications), the frankpledge system involved ten men "pledg[ing] for each other's good behavior" and if any of them broke the

law, "the remaining nine would be responsible for producing him in court, or else face punishment in his stead." *Id.* (internal quotation marks and citations omitted). "Eventually, the communal frankpledge system evolved into the individualized surety regime." *Id.* And it was "surety laws"—not frankpledges—that states used to "target[] the misuse of firearms," as early as 1795. *Id.* at 696. Indeed, surety laws became "[w]ell entrenched in the common law" and were "invoked to prevent all forms of violence." *Id.* at 695. Accordingly, frankpledges have nothing to do with this "Nation's historical tradition of firearm regulation," or, consequently, *Bruen* Step Two. *Id.* at 24. The system was absent from the Nation's founding and was never used to regulate firearms.

Indeed, the Supreme Court discussed at great length the parallels between historic surety laws and modern firearm regulations implemented to prevent dangerous individuals from obtaining weapons. *See Bruen*, 597 U.S. at 55-59; *Rahimi*, 602 U.S. at 695-700. But the Supreme Court spent only four sentences superficially discussing frankpledges. *See Rahimi*, 602 U.S. at 695.

"The great object of our Constitution is to preserve individual rights."
*Bills v. Dahm*, 32 F.3d 333, 336 (8th Cir. 1994). A system like
frankpledges that holds third parties criminally liable for another's
actions runs counter to our Nation's fundamental ideals of individual
liberty. *Id*. Therefore, frankpledges are irrelevant for *Bruen* analysis.

## B. Historic surety laws do not support the Reciprocity Statute.

The Reciprocity Statute is not the equivalent of historic surety laws.
*See* Appellant Br. at 23-29. Fundamentally, surety laws presume "the
Second Amendment right may only be burdened once [someone] has
been found to pose a credible threat to the physical safety of others."
*Rahimi*, 602 U.S. at 700. But the Reciprocity Statute presumes an
unrecognized out-of-state firearm license holder is a public safety threat
until the government deems that his license's issuing state has
"similar" laws to Minnesota's system. Minnesota's reciprocity statute is
nothing like historic surety laws.

## C. Minnesota's public interest does not support the Reciprocity Statute.

The Reciprocity Statute does not serve the governmental interest of
lawfully preventing violence or promoting public safety. The district

court held that the interest the Reciprocity Statute purportedly serves is "to ensure that only law-abiding, responsible individuals bear arms" in Minnesota. J. App. 98; R. Doc. 39, at 15. Likewise, Minnesota argues its law's purpose is "to prevent violence before it occurs" and ensure that only "law-abiding individuals" are armed. Appellee Br. at 24-26. Not so.

The *Bruen* Court held valid firearm regulations "do not require [individuals] to show an atypical need for armed self-defense, [and] they do not necessarily prevent law-abiding, responsible citizens from exercising their Second Amendment right to public carry." 597 U.S. at 38 n.9 (internal quotation marks omitted).

Everyone that holds an out-of-state firearm license that Minnesota refuses to recognize has already demonstrated that they are law-abiding, responsible individuals. Indeed, all unrecognized states require a criminal background check[3] and they do not issue a license to anyone

---

[3] *See* Ala. Code §13A-11-75; Ariz. Rev. Stat. Ann. §13-3112; Fla. Stat. §790.06; Ga. Code Ann. §16-11-129; Ind. Code §35-47-2-3; Iowa Code §§724.7, .8; Me. Rev. Stat. Ann., Tit. 25, §2003; N. H. Rev. Stat. Ann. §§159:3, 159:3-a, 159:6, 159:12; Ore. Rev. Stat. §166.291; 18 Pa. Cons. Stat. §6109; Utah Code § 53-5a-303; Va. Code Ann. §§ 18.2-308.02, .04, .09; Wash. Rev. Code §9.41.070; Wis. Stat. §175.60; Wyo. Stat. Ann. §6-8-104.

that is prohibited from possessing a firearm under state or federal law.[4]
And unlike Texas, which Minnesota recently recognized, most
unrecognized states also require some type of firearm safety or training
course.[5]

"The Second Amendment 'is the very product of an interest balancing
by the people' and it 'surely elevates above all other interests the right
of law-abiding, responsible citizens to use arms' for self-defense. It is
this balance—struck by the traditions of the American people—that
demands . . . unqualified deference." *Bruen*, 597 U.S. at 26 (quoting
*District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)).

Unrecognized license holders are law-abiding, responsible citizens
that want to bear arms for self-defense. Their interests demand
deference. *Id.* Their unrecognized licenses serve Minnesota's interest in
ensuring that only law-abiding, responsible individuals bear arms in
Minnesota,[6] and more than recognized Texas licenses do in some cases.

---

[4] *See* n.3 *supra.*
[5] *See* n.3 *supra*; Texas Tex. Gov't Code § 411.172.
[6] In addition to their public safety standards, the unrecognized licenses'
age requirements vary from 18 to 21. *See* n.3 *supra.* But this is
irrelevant under *Worth*, 108 F.4th at 698. Status in Minnesota's
criminal gang database is also immaterial for other states (whether
their firearm license is recognized or not) because Minnesota

Refusing to recognize these firearm licenses serves no government interest. And "[a] rule whose fair enforcement" does not serve any government interest "is not reasonable" or constitutional. *Minn. Voters All. v. Mansky*, 585 U.S. 1, 19 (2018).

## V.      The Reciprocity Statute is unconstitutionally vague.

This Court can declare Minn. Stat. Ann. § 624.714 Subd. 16 unconstitutionally vague under the Second Amendment because it does not "contain only narrow, objective, and definite standards [to] guid[e] licensing officials," as required by *Bruen*, 597 U.S. at 38 n.9, and for the reasons set forth *supra* in § III.

This Court may also exercise its discretion under *Fleck v. Wetch*, 937 F.3d 1112, 1116 (8th Cir. 2019), and consider the Due Process argument that Minn. Stat. Ann. § 624.714 Subd. 16 is unconstitutionally vague, which Johnson raised in his principal brief and now provides more relevant context below.

Plainly, this appeal is not the first instance where Minnesota's arbitrary enforcement of its reciprocity statute was discussed. Johnson

---

exclusively uses, informs, updates, and operates the system. *See* Minn. Stat. § 299C.091.

mentioned it in his complaint and at the hearing. J. App. 2; R. Doc. 1, at ¶ 4; J. App. 117; R. Doc. 45, at 14:14, 17:9-11. And the district court ruled that Minnesota's licensing system, which includes the reciprocity statute, applied "objective standards rather than arbitrary discretion." J. App. 99; R. Doc. 39, at 16. Admittedly, this Due Process vagueness claim was not thoroughly briefed until this appeal. But because the arbitrariness of the Reciprocity Statute was alleged in the complaint, argued at the hearing, and ruled on by the district court, raising it in the appeal is not an unfair surprise and should provide a foundation for bringing the issue to this Court.

Regardless, it was not until Minnesota revealed the true substantive essence of its "unfair or inconsistent enforcement," *Mansky*, 585 U.S. at 22, of Minn. Stat. Ann. § 624.714 Subd. 16 at the motion to dismiss hearing that the unconstitutional vagueness issue became evident. And instead of just assessing whether Johnson had "allege[d] sufficient facts to state a facially plausible claim to relief," *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020), the district court reached the merits his claim and dismissed the case before Johnson could obtain more

information through discovery and thoroughly litigate the vagueness issue at the district court.

At the outset of this case, Texas was not on Minnesota's reciprocity list and a plaintiff with a Texas firearm license was a party to this litigation. J. App. 9-10; R. Doc. 1, at ¶¶ 25-33. In the weeks leading up to the district court hearing, Minnesota added Texas to its reciprocity list, *see* J. App. 88; R. Doc. 39, at 5 n.3, without *any* change in Texas firearm license law, which prompted the Texas plaintiff to dismiss his claim. J. App. 88; R. Doc. 39, at 5; J. App. 107; R. Doc. 45, at 4:23-25; J. App. 117; R. Doc. 45, at 14:17-18.

Johnson intended to learn how states like Texas were added or removed from Minnesota's reciprocity list through discovery and possibly make this a disqualifying reason for its reciprocity list on summary judgment. *See* J. App. 119-120; R. Doc. 45, at 16:25—17:1-6. But Minnesota revealed at the hearing that it did not have any answers for how it determines what firearm license laws are "similar" to its own or what could disqualify a state from being on its reciprocity list.

The district court asked the government what does Minnesota do "to examine other laws to determine whether they're similar or not[?] Is

there a process? Is there regulation that focus[es] on that?" J. App. 131; R. Doc. 45, at 28:20-23. The government had no answers. To explain how a state is added to the reciprocity list, the government just recited the statute. *See* J. App. 131-32; R. Doc. 45, at 28:24—29:14. And the government did not "know one way or another" how Minnesota removes a state from its reciprocity list. J. App. 132; R. Doc. 45, at 29:15-18.

Minnesota's statements at the hearing conclusively show that the terms in Minn. Stat. Ann. § 624.714 Subd. 16 "are not clearly defined," *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972), and "encourages arbitrary and discriminatory enforcement." *Duhe v. City of Little Rock*, 902 F.3d 858, 863 (8th Cir. 2018) (internal quotation marks omitted).

Furthermore, Minnesota revealed how arbitrarily states are added to its reciprocity list when the district court asked the government how Texas was added to the list. The only explanation Minnesota could offer was that the addition was required because of the decision in *Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024). J. App. 107; R. Doc. 45, at 4:24-25.

Johnson's principal brief and Section III *supra* explain why the *Worth* decision had nothing to do with Minnesota adding Texas to its

reciprocity list, *see* Appellant Br. at 31-33, and how the addition of Texas to the list was not "guided by objective, workable standards." *Mansky*, 585 U.S. at 21.

Finally, Minnesota revealed at the hearing the extent of how "unfair or inconsistent [its] enforcement," of the reciprocity statute is when it asserted that Johnson should merely obtain another firearm license from a state that already has reciprocity with Minnesota. Indeed, the government recommended that Johnson acquire a firearm license online from Kentucky to solve his Minnesota reciprocity problem. *See* J. App. 114; R. Doc. 45, at 11:4-15.

But Johnson's principal brief and Section III *supra* explain why suggesting that he merely obtain a Kentucky firearm license, or even a Texas license, proves Minnesota's reciprocity statute is not "guided by objective, workable standards and unfairly or inconsistently enforced." *Mansky*, at 21-22; *see* Appellant Br. at 33-34.

At bottom, Johnson was not afforded a genuine opportunity to litigate the constitutional vagueness issue at the district court. The extent of the problem was not revealed by the government until the

motion to dismiss hearing and Johnson was unable to complete the discovery process.

Accordingly, this Court should "invoke [its] discretion to consider [the constitutional vagueness] issue for the first time on appeal [because] the proper resolution [of this issue] is beyond any doubt [and] the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case." *Fleck*, 937 F.3d at 1116 (8th Cir. 2019) (internal quotation marks omitted). Indeed, the government's admissions in front of the district court is the evidence and this Court can evaluate these statements with the law laid out by Johnson in this reply brief, in his principal brief, *see* Appellant Br. at 29-36, and in any other source of law the Court desires. Therefore, this Court should exercise its discretion to review these Due Process matters and declare Minn. Stat. Ann. § 624.714 Subd. 16 unconstitutionally vague, overbroad, and unreasonable.[7]

At a minimum, this Court should reverse the district court's decision to allow Johnson to address this issue.

---

[7] Johnson objects to the government's request for a sur-reply. *See* Appellee Br. at 30 n.4.

## CONCLUSION

The district court's decision should be reversed.

Respectfully Submitted,

/s/ Ryan Morrison
Ryan Morrison
Timothy Kilcullen
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
rmorrison@ljc.org
tkilcullen@ljc.org
*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,494 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), according to the word count as calculated by Microsoft Word for Microsoft Office 365, which was used to prepare this brief.

A virus detection program was run on the brief and no virus was detected.

/s/ Ryan Morrison
*Counsel for Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF System. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Ryan Morrison
*Counsel for Appellant*